IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **BPX PRODUCTION COMPANY, F/K/A PETROHAWK ENERGY CORPORATION,** | § § § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | **CIVIL ACTION NO.: 22-CV-001058** |
| **CERTAIN UNDERWRITERS AT LLOYD'S, LONDON SUBSCRIBING TO CGL POLICY NO. ENGLO1800982 AND CERTAIN UNDERWRITERS AT LLOYD'S, LONDON SUBSCRIBING TO UMBRELLA POLICY NO. ENGLO1800981,** | § § § § § § § § | |
| **Defendants.** | § | |

## PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS UNDER 12(b)(6) FOR FAILURE TO STATE A CLAIM

John D. Sullivan
PIERCE & O'NEILL, LLP
4203 Montrose Boulevard
Houston, Texas 77006
(713) 634-3620 Direct
(713) 634-3600 Main
(713) 634-3601 Fax
jsullivan@pierceoneill.com
*Attorney-in-Charge*

Tracy C. Temple
PIERCE & O'NEILL, LLP
4203 Montrose Boulevard
Houston, Texas 77006
(713) 634-3607 Direct
(713) 634-3600 Main
(713) 634-3601 Fax
ttemple@pierceoneill.com

Brian K. Tully
PIERCE & O'NEILL, LLP
4203 Montrose Boulevard
Houston, Texas 77006
(713) 634-3608 Direct
(713) 634-3636 Main
(713) 634-3601 Fax
btully@pierceoneill.com

*COUNSEL FOR PLAINTIFF*
*BPX PRODUCTION COMPANY*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES.................................................................................. iii

SHORT STATEMENT OF THE NATURE AND
STAGE OF THE PROCEEDING ........................................................................ 1

STATEMENT OF THE ISSUES TO BE RULED UPON
BY THE COURT AND APPLICABLE STANDARDS OF REVIEW............................. 2

FACTUAL BACKGROUND ............................................................................... 3

SUMMARY OF THE ARGUMENT ..................................................................... 4

ARGUMENT AND AUTHORITIES ..................................................................... 5

      I.     Plaintiff has viable claims for breach of the duty to defend
           and the duty to indemnify................................................................. 5

           A.    Defendants issued a blanket denial of coverage
                indicating that they would never defend or indemnify
                against BPX's claims. ......................................................... 5

           B.    The duty to defend was triggered by BPX's demand to participate
                in the mandatory alternative dispute resolution process. ................... 6

           C.    Defendants' "denial of coverage" also establishes
                the duty to defend was triggered. ........................................ 9

           D.    Defendants' duty to indemnify can be determined in this proceeding
                notwithstanding the lack of an underlying
                adversarial trial against BJ Services................................... 11

      II.    Plaintiff has viable claims for "bad faith" conduct and
           breach of the Texas Insurance Code. .......................................... 17

      III.   This Court should exercise its discretion to allow Plaintiff's
           claims for declaratory relief. ..................................................... 18

CONCLUSION AND RELIEF SOUGHT ....................................................... 21

## **TABLE OF AUTHORITIES**

*Cases*

*Altman Contractors, Inc. v. Crum & Forster Specialty Ins. Co.*,
    232 So.3d 273 (Fla. 2017).....................................................................................7

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)............................................................................................3

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)............................................................................................2

*Bernsden v. N. Dakota Univ. Sys.*,
    7 F.4th 782 .........................................................................................................3

*Brillhart v. Excess Insurance Co. of America*,
    316 U.S. 491 (1942)....................................................................................18, 19

*Charles v. Tamez*,
    878 S.W.2d 201 (Tex. App.—Corpus Christi 1994, writ denied).......................17

*Comsys Info. Tech. Servs., Inc. v. Twin City Fire Ins. Co.*,
    130 S.W.3d 181 (Tex. App.—Houston [14th Dist.] 2003, pet. denied)...........8, 11

*D.R. Horton-Tex., Ltd. v. Markel Int'l Ins. Co.*,
    300 S.W.3d 740 (Tex. 2009)..............................................................................11

*Eagle Supply & Mfg. L.P. v. Landmark Am. Ins. Co.*,
    630 S.W.3d 342 (Tex. App.—Eastland 2021, pet. denied) .....................13, 14, 15

*Evanston Ins. Co. v. ATOFINA Petrochemicals, Inc.*,
    256 S.W.3d 660 (Tex. 2008)..............................................................................12

*G.A. Stowers Furniture Co. v. Am. Indem. Co.*,
    15 S.W.2d 544 (Tex. 1929).................................................................................17

*Great American Insurance Co. v. Hamel*,
    525 S.W.3d 655 (Tex. 2017).................................................................4, 12, 13, 14

*Gulf Ins. Co. v. Parker Prods., Inc.*,
  498 S.W.2d 676 (Tex. 1973)......................................................................8, 10

*Intelligent Digital Sys., LLC v. Beazley Ins. Co.*,
  207 F.Supp.3d 242 (E.D. N.Y. 2016) ...................................................... 13

*Johnson v. City of Shelby, Miss.*,
  574 U.S. 10 (2014)......................................................................................2, 8

*Kelly Inv., Inc. v. Cont'l Common Corp.*,
  315 F.3d 494 (5th Cir. 2002) .................................................................... 19

*Landmark Am. Ins. Co. v. Eagle Supply & Mfg. Co., L.P.*,
  530 S.W.3d 761 (Tex. App.—Eastland 2017, no pet.)........................... 15

*Liberty Mut. Ins. Co. v. Mustang Tractor & Equip. Co.*,
  812 S.W.2d 663 (Tex. App.—Houston [14th Dist.] 1991, no writ).................... 10

*Matter of Edgeworth*,
  993 F.2d 51 (5th Cir. 1993) ...................................................................... 16

*Meyers Warehouse, Inc. v. Canal Indem. Co.*,
  614 Fed. Appx. 719 (5th Cir. 2015)..........................................................7, 8

*Nat'l Union Fire Ins. Co. of Pittsburg, PA v. Puget Plastics Corp.*,
  649 F.Supp.2d 613 (S.D. Tex. 2009) ...................................................... 10

*O'Donnell v. Avis Rent a Car Sys., LLC*,
  No. 3:19-CV-2687-S-BK, 2022 WL 962513 (N. D. Tex. Mar. 11, 2022)...........11

*Parker Prods., Inc. v. Gulf Ins. Co.*,
  486 S.W.2d 610 (Tex. Civ. App.—Fort Worth 1972, writ granted) ................... 10

*Pavia v. State Farm Mut. Auto Ins. Co.*,
  626 N.E.2d 24 (N.Y. 1993)........................................................................ 17

*Petrobras Am., Inc. v. Samsung Heavy Indus. Co., Ltd.*,
  9 F.4th 247 (5th Cir. 2021) ........................................................................ 2

*Phillips v. Bramlett*,
   288 S.W.3d 876 (Tex. 2009) .................................................................. 17

*Pogo Res., LLC v. St. Paul Fire & Marine Ins. Co.*,
   No. 3:19-CV-2682-BH, 2022 WL 209276 (N.D. Tex. Jan. 24, 2022) ................ 18

*Rhodes v. Chi. Ins. Co.*,
   719 F.2d 116 (5th Cir. 1983) .............................................................. 10

*Ryan Law Firm, LLP v. N.Y. Marine & Gen. Ins. Co.*,
   No. 19-CV-629, 2020 WL 4043754 (W.D. Tex. Jul. 16, 2020) ........................... 8

*Sherwin-Williams Co. v. Holmes County*,
   343 F.3d 383 (5th Cir. 2003) ...................................................... 18, 19, 20

*St. Paul Ins. Co. v. Trejo*,
   39 F.3d 585 (5th Cir.1994) ................................................................ 19

*State Farm Fire & Cas. Co. v. Gandy*,
   925 S.W.2d 696 (Tex. 1996) ........................................................... 12, 13

*Turner v Cincinnati Insurance Co.*
   9 F.4th 300 (5th Cir. 2021) ............................................................... 14

*Vulcan Materials Co. v. City of Tehuacana*,
   238 F.3d 382 (5th Cir. 2001) ............................................................. 19

*Wilton v. Seven Falls Co.*,
   515 U.S. 277 (1995) ....................................................................... 18

*Statutes*

28 U.S.C. § 1332 ............................................................................. 1

*Rules*

Fed. R. Civ. Proc. 8 .......................................................................... 2

Fed. R. Civ. Proc. 12(b)(6) .................................................................. 2

*Other Authorities*

5B Charles Alan Wright & Arthur R. Miller, Federal Practice
   and Procedure § 1357 (3d ed. 2020) ......................................................................3

## SHORT STATEMENT OF THE
## NATURE AND STAGE OF THE PROCEEDING

1.     *Nature of the dispute.*  This is an insurance coverage dispute brought by the injured party as an assignee of the insured.  Plaintiff BPX Production Company, f/k/a Petrohawk Energy Corporation ("Plaintiff" or "BPX") lost an oil well and other property after the insured BJ Services ("BJ Services") negligently performed a cement job on the well. Defendants are the insurers under commercial general liability and umbrella insurance policies issued to BJ Services.  When BPX lost its well, BPX initiated a contractually-mandated alternative dispute resolution process with BJ Services, and then BJ Services tendered that claim to Defendants.  Almost immediately thereafter, Defendants clearly and unequivocally denied coverage.  Shortly after the denial, BJ Services filed for bankruptcy.  To resolve its dispute with BJ Services over the damage to the well, BPX and BJ Services reached a settlement that was approved by the bankruptcy court. Through the settlement BPX obtained an assignment of BJ Service's rights and causes of action against its insurers, which are the Defendants in this lawsuit.

2.     *Stage of the proceeding*.  BPX filed this lawsuit in Texas state court on February 24, 2022, asserting claims for breach of contract, bad faith, statutory violations, and declaratory relief.  (Doc. No. 1-4).  Defendants timely removed the lawsuit to federal court based on diversity jurisdiction.  (Doc. No. 1); 28 U.S.C. § 1332. Magistrate Judge Andrew M. Edison held a pre-motion conference on April 29, 2022.  (*See* Doc. No. 15).

3.     Pursuant to the schedule entered by Judge Edison at the pre-motion conference, BPX filed its First Amended Complaint on May 27, 2022 (Doc. No. 18). Defendants filed a

Motion to Dismiss (Doc. No. 19) on June 23, 2022.  BPX files this Response to Defendants'

Motion to Dismiss by the July 15, 2022, deadline set forth in the Court's Minute Entry.

### STATEMENT OF THE ISSUES TO BE RULED UPON BY THE COURT AND APPLICABLE STANDARDS OF REVIEW

4.      Defendants filed their motion to dismiss under Federal Rule of Civil Procedure

12(b)(6), claiming that BPX has failed to adequately state a claim upon which relief may be

granted.  (*Motion*, ¶ 1).  According to Defendants, BPX cannot prevail because it has

allegedly failed to allege facts triggering a duty to defend or a breach of the duty to

indemnify, there is no common law bad faith claim in the third-party context, the statutory

violations cannot be assigned, and the declaratory relief claims are duplicative.  (*See Motion*,

¶¶ 5-9).  Defendants' challenges to BPX's pleadings should be denied because BPX has

sufficiently pleaded its claims.

5.      Under Federal Rule of Civil Procedure 8, the claimant must provide "a short

and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P.

8(a)(2); *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014) (per curiam).  When the

pleadings sufficiently inform the defendant of the factual basis for the claims, the motion

should be denied because plaintiffs need "do no more to stave off threshold dismissal for want

of an adequate statement of their claim."  *See Johnson*, 574 U.S. at 12.

6.      In reviewing a motion to dismiss under Rule 12(b)(6), the Court accepts "all

well-pleaded facts as true, viewing them in the light most favorable to the plaintiff."

*Petrobras Am., Inc. v. Samsung Heavy Indus. Co., Ltd.*, 9 F.4th 247, 253 (5th Cir. 2021).  A

motion to dismiss should be denied if the plaintiff pleads "enough facts to state a claim to

relief that is plausible on its face."  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

A claim to relief is plausible on its face if the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  In cases of novel or unique theories, the court should be cautious in granting dismissal.  *See Bernsden v. N. Dakota Univ. Sys.*, 7 F.4th 782, 790 n. 7 (8th Cir. 2021) (noting that some circuits "have cautioned against Rule 12(b)(6) dismissals when, as here, complaints include novel legal theories"); *see also* 5B Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1357 (3d ed. 2020) ("The district court should be especially reluctant to dismiss on the basis of the pleadings when the asserted theory of liability is novel or even 'extreme,' since it is important that new legal theories be explored and assayed in the light of actual facts rather than a pleader's suppositions.").

## **FACTUAL BACKGROUND**

7.     The following well-pleaded facts included in BPX's complaint sufficiently state BPX's claims.  BPX drilled the State Willie Vee 56-T3-6 W107H well in Reeves County, Texas.  On October 2, 2018, BJ Services performed a cement job on the production casing of the well.  Due to the negligence and/or gross negligence of BJ Services, the cement hardened prematurely causing a 7000' cement plug to develop in the well.  BPX had to drill out the cement plug and perform remediation operations to salvage and complete the well.  The remediation and salvage operations were unsuccessful, and the cement job ruined the entire well.  BPX had to abandon the well and drill and complete a replacement well.  It cost BPX several million dollars to drill the well, to drill out the cement plug, to attempt to remediate and salvage the well, and to drill and complete a replacement well. (Doc. No. 18 at ¶¶ 8-10).

8.      BPX submitted a notice of dispute to BJ Services under the terms of the Master Services Agreement, the relevant agreement executed by the two companies. In the notice of dispute, BPX informed BJ Services that it was seeking damages arising from the faulty cement job and demanded $2,500,000 to resolve the claim. BJ Services submitted the notice of dispute to Defendants.   Upon receiving the notice of dispute, Defendants almost immediately denied coverage and refused to defend and indemnify BJ Services.   Not long thereafter, BJ Services filed for bankruptcy.   BPX and BJ Services settled BPX's claim by reaching an agreement under which BJ Services assigned its claims against Defendants for defense, indemnification, bad faith, and violations of the Texas Insurance Code to BPX.   The bankruptcy court approved the settlement.   (Doc. No. 18 at ¶¶ 12-17).

## SUMMARY OF THE ARGUMENT

9.      Defendants' denial of coverage and refusal to defend and indemnify BJ Services for BPX's claims gave rise to claims of breach of contract (for failure to defend and indemnify), extra-contractual bad faith and statutory violations of the Texas Insurance Code, and declaratory judgment.   BJ Services assigned those claims to BPX. With the assignment from BJ Services, BPX is authorized to pursue this action against Defendants to establish the liability of BJ Services, BPX's damages, and Defendants' responsibility to cover and pay BPX's claim. Contrary to Defendants' argument in their motion, BPX was not required to obtain a judgment against BJ Services as a precondition of bringing this action against Defendants.  Instead, under the process recently set forth in *Great American Insurance Co. v. Hamel*, 525 S.W.3d 655 (Tex. 2017), the amount owed under the policies will be determined in this coverage action.

4

As the well-pleaded facts in BPX's complaint show, the duty to defend was triggered by BPX's initiation of the mandatory alternative dispute resolution process.  Likewise, the duty to indemnify was breached when Defendants unequivocally denied and refused to provide coverage for BPX's claim against BJ Services.  The lack of a lawsuit and judgment against BJ Services prior to the settlement with BPX does not permit Defendants to avoid their contractual responsibility.  The extra contractual claims are viable because these facts fit bad faith in the third-party context and there are circumstances in which such claims can be assigned, contrary to Defendants' argument.  The claims for declaratory relief, regardless of whether they are duplicative, should be determined in this action under the standards for declaratory judgment.  Defendants' Motion lacks merit and should be denied.

## ARGUMENT AND AUTHORITIES

**I.      Plaintiff has viable claims for breach of the duty to defend and the duty to indemnify.**

**A.      Defendants issued a blanket denial of coverage indicating that they would never defend or indemnify against BPX's claims.**

10.      The incident occurred on October 2, 2018.  Pursuant to the parties' contractual agreement, BPX followed the mandatory dispute resolution process set forth in the agreement. (Ex. C to *Motion*, ¶ 12.2-12.3).  BPX initiated the contractually-required dispute resolution procedure in a good-faith attempt to resolve their dispute, as required prerequisites to any lawsuit or arbitration proceeding.  (*See* Ex. C to *Motion*, ¶ 12.2-12.3).  BJ Services then tendered that claim to Defendants.

11.      As referenced in the First Amended Complaint, Defendants (through counsel) issued a letter dated February 12, 2019, in which they "deny they are obligated to indemnify

5

or provide coverage under either policy . . . ."  (Doc. No. 18, ¶ 12; Ex. C, p. 2).  BJ Services was left to participate in the required pre-suit settlement process without any coverage from Defendants.   The parties continued to discuss settlement, again without coverage from Defendants, but did not reach a resolution, and BJ Services ultimately filed for bankruptcy protection.  After many months of negotiations, BPX and BJ Services settled their dispute, and BPX was able to obtain an assignment of BJ Services' rights from the bankruptcy court. (*See* Ex. D to *Motion*).

### B.   The duty to defend was triggered by BPX's demand to participate in the mandatory alternative dispute resolution process.

12.      Defendants claim that the duty to defend was never triggered.  The essence of Defendants' argument is that, because BPX never filed a lawsuit or initiated an arbitration proceeding against BJ Services, no "suit" was ever filed and therefore a duty to defend never arose.  (*Motion* at ¶19).  Defendants' argument fails because, under the express terms of the CGL policy, a "suit" can include alternative dispute resolution procedures to trigger the duty to defend.[1]  The CGL policy defines "suit" to include "any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent."  (Ex. A to *Motion*, at ¶18).[2]  Such an alternative dispute resolution proceeding was

---

[1]      BPX does not dispute that the primary CGL policy contained a duty to defend, while the excess umbrella policy did not.  (*See Motion*, ¶¶ 21-22).

[2]      An initial issue that should be noted by the Court was brought to light by the exhibits attached to Defendants' Motion to Dismiss.  The insurance policies attached as Exhibits to Defendants' Motion appear to be different than the copies of these same policies as obtained by BPX.  (*Compare* Ex. B to *Motion*, p. 42 *with* Ex. A, p. 41).  While the Court can consider the insurance policy referenced in the Complaint in the context of deciding Defendants' Motion to Dismiss, this Court <u>*must*</u> be certain that it is considering a true and complete copy of that document.  It appears that there may be a fact issue regarding the terms of the insurance policy, and that is a reason for this Court to deny Defendants' Motion.

initiated by BPX when it made the demand to participate in the process contained in the Master Services Agreement.   In fact, the Master Services Agreement uses mandatory language such as "shall" and "must" and requires the parties to complete the process before filing a lawsuit.  (Ex. C to *Motion*, ¶ 12.1) ("The provisions of this Procedure shall be the exclusive method of resolving Disputes . . . ."), ¶12.2(a) ("first, a Party must give written notice of the Dispute . . . in accordance with the notice provisions of this Agreement.").

13.     A mandatory alternative dispute procedure that a party is required to engage in before the filing of a lawsuit can satisfy the definition of "suit" for the purpose of triggering the duty to defend.  *See Altman Contractors, Inc. v. Crum & Forster Specialty Ins. Co.*, 232 So.3d 273, 278-79 (Fla. 2017).  In addressing a definition of "suit" identical to that involved in this case, the Supreme Court of Florida noted that "alternative dispute resolution" means "'[a] procedure for settling a dispute by means other than litigation.'"  *Id.* at 278.  A statutory scheme requiring the parties to first engage in a defined settlement process wherein a party claimed damages before filing suit was considered a "suit" for purposes of triggering the duty to defend.  *Id.*  Likewise, the dispute resolution process contained in the Master Services Agreement pursuant to which BPX sought damages is a "suit" as defined under the policy.

14.     Defendants seek to minimize the alternative dispute resolution process contained in the policy by describing it as an "informal settlement negotiation," citing *Meyers Warehouse, Inc. v. Canal Indem. Co.*, 614 Fed. Appx. 719, 722 (5th Cir. 2015) (not designated for publication). (*Motion*, ¶17).  Defendants' argument ignores the structured and mandatory nature of the process set forth in the Master Services Agreement.  Moreover, *Meyers* is distinguishable.  In *Meyers*, the parties did not engage in an alternative dispute

7

procedure that was a contractually-required prerequisite to filing suit. *See id.* at 720 (stating simply that the parties negotiated a settlement). The "informal settlement negotiation" at issue in *Meyers* is different than the contractually-required process initiated by BPX in this case, and *Meyers* is therefore unpersuasive.

15. Defendants also state that BPX did not plead that BJ Services engaged in the alternative dispute resolution process with Defendants' consent (even though it was mandatory). (*See Motion*, ¶18). As explained in more detail below, the unequivocal denial of coverage by Defendants precludes them from relying upon a lack of consent. *See Gulf Ins. Co. v. Parker Prods., Inc.*, 498 S.W.2d 676, 679 (Tex. 1973) (unconditional refusal to defend or assume liability under policy waives compliance with procedural protections of policy).[3] BPX pleaded that Defendants wrongfully denied coverage. (Doc. No. 18, ¶ 20). Thus, BPX did not need to also plead consent to the process to avoid dismissal. *See Johnson*, 574 U.S. at 11 (court should deny 12(b)(6) motion where facts pleaded show right to relief even if particular legal theory not stated). In addition, even if denial of coverage did not preclude Defendants from relying on a lack of consent, Defendants will need to present evidence that they were prejudiced by BJ Services engaging in the mandatory alternative dispute resolution process without consent. *See Ryan Law Firm, LLP v. N.Y. Marine & Gen. Ins. Co.*, No. 19-CV-629, 2020 WL 4043754, *4-8 (W.D. Tex. Jul. 16, 2020); *see also Comsys Info. Tech. Servs., Inc. v. Twin City Fire Ins. Co.*, 130 S.W.3d 181, 192 (Tex. App.—Houston [14th

---

[3] The insurance policies specify that they will be governed by New York law, (Ex. B to *Motion*, p. 5), but it appears that Defendants based their Motion to Dismiss entirely on Texas law. Determining the substantive law that will govern this dispute may be an important issue in this lawsuit. While this will be discussed in greater detail below, Texas law allows a party like BPX to

Dist.] 2003, pet. denied) ("Even if Twin City did not waive the 'consent' provision, such a provision 'will not operate to discharge the insurer's obligations under the policy unless the insurance company is actually prejudiced or deprived of a valid defense by the actions of the insured.'").

### C.   Defendants' "denial of coverage" also establishes the duty to defend was triggered.

16.   Defendants' denial of coverage included a denial of a duty to defend.  The Defendants' letter denying coverage refers to a "claim made by" BPX for damage to the well at issue that occurred on October 2, 2019, and under a Master Services Agreement dated October 12, 2017.  (Ex. C, p. 1).  Thus, at the time Defendants denied coverage on February 12, 2019, BPX had already asserted a "claim," and Defendants were sufficiently aware of this "claim" that they hired a law firm to review the matter and help Defendants review and ultimately deny coverage.  Defendants determined (wrongly) that BJ Services had failed to comply with certain provisions of the insurance contract such that "the Underground Property Damage Endorsement is not applicable."  (Ex. C, p. 8).  Defendants also concluded (again wrongly), at this same early date, that certain contractual provisions in the Master Services Agreement eliminated the possibility of liability against BJ Services.  (Ex. C, pp. 1-2).  Defendants unequivocally stated their position that "they deny any obligation to indemnify *or provide coverage* to BJ for the claim asserted by [BPX]."  (Ex. C, p. 9) (emphasis added).  The insurance policies include the duty to defend within the description of "insurance coverage."  (Ex. A to *Motion*, p. 44 at Section I ("Coverage") (including the duty

---

obtain an assignment from an insured like BJ Services and sue its insurers (*i.e.*, Defendants here) directly, and New York law is consistent with BPX's position.  *See* Section I.D. below.

to defend in the description of the "Insuring Agreement")); *see also Rhodes v. Chi. Ins. Co.*, 719 F.2d 116, 120 (5th Cir. 1983) (noting that "the duty was clearly breached by the insurer's denial of coverage and failure to defend."); *Liberty Mut. Ins. Co. v. Mustang Tractor & Equip. Co.*, 812 S.W.2d 663, 667 (Tex. App.—Houston [14th Dist.] 1991, no writ) (noting the language of the insurance policies as well as the "general understanding in the legal community" that the term "coverage" includes the duty to defend). Thus, by determining that it would deny coverage for the damages arising out of the incident, Defendants also determined that they would deny the duty to defend in any subsequent suit filed by BPX against BJ Services arising out of this same incident.

17. The direct implications of this are important. By denying any obligation to "indemnify or provide coverage," Defendants communicated to BJ Services that there was no conceivable set of circumstances under which they would agree to provide coverage under the policies for this incident. (*See* Ex. C). By denying coverage, Defendants lost the benefit of any procedural protections in the policy in the event of a wrongful denial. The general rule is that "insurers who wrongfully refuse to defend an insured or erroneously deny coverage under a policy lose the benefit of the policy's procedural protections." *Nat'l Union Fire Ins. Co. of Pittsburg, PA v. Puget Plastics Corp.*, 649 F.Supp.2d 613, 620 (S.D. Tex. 2009). Further, where the insurer denies coverage on the ground that the claim was not covered by the policy, as is the case here, the insurer is "liable for the insured's settlement before suit when the claim was found to have been within the policy coverage." *Parker Prods., Inc. v. Gulf Ins. Co.*, 486 S.W.2d 610, 612 (Tex. Civ. App.—Fort Worth 1972, writ granted), *aff'd* 498 S.W.2d 676 (Tex. 1973). Thus, accepting as true BPX's allegation that Defendants

"wrongfully denied the claims," (Doc. No. 18, ¶ 20), Defendants have no ability to claim the benefit of other procedural protections contained in the policies.

18.     Accordingly, this Court should conclude that Defendants had already denied not only their duty to indemnify, but their duty to defend as well.

**D.     Defendants' duty to indemnify can be determined in this proceeding notwithstanding the lack of an underlying adversarial trial against BJ Services.**

19.     Among other things, Defendants suggest that because no "suit" was filed, the "underwriters will never have a duty to indemnify." (*Motion*, ¶ 25).  The duty to defend and the duty to indemnify, however, are separate and distinct, and "the existence of one does not necessarily depend on the existence or proof of the other." *D.R. Horton-Tex., Ltd. v. Markel Int'l Ins. Co.*, 300 S.W.3d 740, 745 (Tex. 2009); *O'Donnell v. Avis Rent a Car Sys., LLC*, No. 3:19-CV-2687-S-BK, 2022 WL 962513, at *8 (N. D. Tex. Mar. 11, 2022) (slip copy). Additionally, the Supreme Court of Texas has stated that because "the duty to indemnify is not dependent on the duty to defend," the insurer therefore "may have a duty to indemnify its insured even if the duty to defend never arises." *D.R. Horton*, 300 S.W.3d at 741.  Therefore, Defendants' arguments regarding the alleged lack of any duty to defend (whether due to the lack of a filing of a "suit" or for any other reason) are not relevant to the existence of a duty to indemnify BJ Services against the claim.

20.     Defendants also appear to argue that the settlement reached between BPX and BJ Services was not an "adjudication" holding BJ Services legally responsible for damages in a lawsuit.  (*Motion*, ¶24).  This argument fails because a settlement is indeed a sufficient legal obligation giving rise to a duty to indemnify.  *See Comsys Info. Tech. Servs., Inc.*, 130 S.W.3d

at 189 n.3 (explaining that a court judgment is not the only manner by which an insured can become legally obligated to pay and that settlement qualifies). As BPX pleaded, BPX and BJ Services reached a settlement under which BJ Services became legally obligated to assign its claims against Defendants to BPX.

21.    Just as there is no procedural issue presented by the lack of a prior lawsuit, neither is there any substantive issue preventing this Court from determining in this proceeding the amount of damages for which BJ Services would be legally responsible. The process for doing so is set forth and discussed in *Great American Insurance Company v. Hamel*, 525 S.W.3d 655 (Tex. 2017).

22.    As a general rule, an insurer that wrongfully refuses to defend its insured is barred from collaterally attacking a judgment or settlement between the insured and the plaintiff. *Evanston Ins. Co. v. ATOFINA Petrochemicals, Inc.*, 256 S.W.3d 660, 671 (Tex. 2008). In certain circumstances, Texas courts have narrowed that rule where the plaintiff seeks to enforce such a judgment against the insurer as the insured's assignee. *State Farm Fire & Cas. Co. v. Gandy*, 925 S.W.2d 696, 712-14 (Tex. 1996). In *Gandy*, the Supreme Court of Texas held that an assignment of the insured's claims is invalid if:

> (1) it is made prior to an adjudication of plaintiff's claim against defendant in a fully adversarial trial, (2) defendant's insurer has tendered a defense, and (3) either (a) defendant's insurer has accepted coverage, or (b) defendant's insurer has made a good faith effort to adjudicate coverage issues prior to the adjudication of plaintiff's claim.

*Id.* at 714. Notably, however, the Court expressly declined to address the validity of an assignment when any of these elements are lacking. *Id.* The Court in *Hamel* addressed that question, finding the assignment valid, but reiterated that: "[i]n no event. . . is a judgment for

plaintiff against defendant, rendered without a fully adversarial trial, binding on defendant's insurer or admissible as evidence of damages in an action against defendant's insurer by plaintiff as defendant's assignee." 525 S.W.3d at 663 (quoting *Gandy*, 925 S.W.2d at 714). Thus, under *Hamel*, an assignment of an insured's claims when an insurer has wrongfully refused coverage can be valid, but any underlying judgment rendered against the insured without a fully adversarial trial would not be binding.

A key point in *Hamel* is the recognition that the insurer "took a significant risk by refusing to defend, or at least litigate its duty to the Builder." *Id.* at 664; *see also id.* at 668-69. Thus, while an insurer will not be bound by a judgment that did not result from a fully adversarial proceeding, the parties will not be precluded from "properly litigating the underlying liability issues in a subsequent coverage suit." *Id.* at 669. The lack of an underlying adversarial trial can be satisfied by litigating the insured's liability to the plaintiff in the subsequent insurance coverage suit between the plaintiff and the insurer. *Id.*; *see also Eagle Supply & Mfg. L.P. v. Landmark Am. Ins. Co.*, 630 S.W.3d 342, 354 (Tex. App.—Eastland 2021, pet. denied).[4] Under this approach, "the insurer will have the opportunity to challenge the insured's underlying liability and the resulting damages, the abandoned insured is protected, and the burden on the plaintiff is fair." *Hamel*, 525 S.W.3d at 669.

---

[4]   To the extent that this Court determines that New York law should apply, the result would not change as New York allows direct actions against an insurer in these circumstances. *See, e.g., Intelligent Digital Sys., LLC v. Beazley Ins. Co.*, 207 F.Supp.3d 242, 244-47 (E.D. N.Y. 2016) (noting, after an extended discussion of authorities, that New York and "a majority of courts in other jurisdictions" hold that "an insurance company remains 'legally obligated' to pay a claim under a policy even where, as here, the claim was assigned to a third party, and the third party agreed not to execute a judgment against the insured's personal assets")..

23.     That is exactly what BPX is attempting to do here.  After the incident, BPX asserted its claim against BJ Services, which notified its insurers (Defendants in this lawsuit). While BPX and BJ Services initiated the mandatory dispute resolution procedure set forth in the Master Services Agreement, Defendants performed (at most) a perfunctory investigation and informed BJ Services that they were denying coverage.  Thus, Defendants refused to defend BJ Services against the claim asserted by BPX.  Unable to reach a resolution, and with BJ Services in bankruptcy, BPX obtained the best resolution it could and one that would be permitted by the bankruptcy court. BPX obtained an assignment from BJ Services of whatever claims it had against Defendants for their failure to provide coverage.  In this lawsuit, this Court can determine Defendants' responsibility for the incident pursuant to the terms of the policies as well as the responsibility of BJ Services for the underlying incident. In *Turner v Cincinnati Insurance Co.,* the Fifth Circuit recognized that under *Hamel* a claimant may litigate liability, damages, and coverage directly against an insurer in a coverage action.  9 F.4th 300, 310-11 (5th Cir. 2021) ("Accordingly, while we will not hold an insurer to a judgment that was not the result of an adversarial proceeding, we will not preclude the parties from properly litigating the underlying liability issues in a subsequent coverage suit.") (quoting *Hamel*, 525 S.W.3d at 669).

24.     In fact, the Eastland Court of Appeals in *Eagle Supply & Manufacturing v. Landmark American Insurance Co. (Landmark II)* addressed a nearly identical set of facts and held that, under *Hamel*, the parties would be permitted to litigate the underlying liability and damages issues in the coverage action.  *Eagle Supply & Mfg.*, 630 S.W.3d at 354.  In *Eagle Supply & Mfg.*, a power-plant owner (Eagle) sued the insured (Metex) for damages resulting

14

from the insured's demolition, cleanup, and remediation work at three power plants. *Id.* at 345. Eagle also added the insured's insurance carriers, attempting to assert direct causes of action against the carriers. *Id.* The insured then filed for bankruptcy, and as part of that bankruptcy proceeding, Eagle obtained a settlement from the insured that included an agreed judgment and an assignment of the insured's rights and causes of action against the insurance carriers.[5] *See id.* at 346. The court of appeals (in a prior appeal) had determined that the judgment obtained in the bankruptcy court was not the result of a fully adversarial trial as required by *Hamel*. *Id.* at 353-54. Thus, the judgment would not be binding nor admissible against the insurers in the coverage action. *Id.* at 354. Importantly, however, the court of appeals explained that, as an assignee, Eagle had standing to assert the claims of the insured against the insurance carriers. *Id.* at 351. The court also explained that:

> [t]he court's holding in *Hamel* also dictates the manner in which [the insured's] claims are to be resolved upon remand. The judgments that Eagle obtained against [the insured] are not binding on [the insurers]. However, the parties are permitted to litigate the underlying liability and damage issues in a subsequent suit, including whether [the insurers] breached a duty to defend [the insured]. In laymen's terms, the parties are 'back to square one' on the question of [the insurers] liability under the insurance policies because the prior judgments are not binding on [the insurers] as a matter of law.

*Id.* at 354. The only distinguishing factor between *Eagle Supply & Mfg.* and this case is that BPX did not obtain a judgment against the insured in the bankruptcy proceeding. Under *Hamel* and its progeny, however, such an act would have been futile because it would not

---

[5] In a prior appeal, the court of appeals determined that, without an assignment, Eagle could not assert direct causes of action against the carriers. *See Landmark Am. Ins. Co. v. Eagle Supply & Mfg. Co., L.P.*, 530 S.W.3d 761, 769 (Tex. App.—Eastland 2017, no pet.) ("*Landmark I*"). Because the record in that case did not evidence the assignment Eagle had received in the bankruptcy proceeding, the court of appeals did not analyze the claims that could be brought as the assignee. *Id.* at 772. The claims based on the assignment were then remanded *Id.* at 774. *Landmark II* followed.

have been adversarial and thus would not have been binding on the insurers.  In other words, the parties would be "back to square one" and would be litigating the underlying liability and damages in the coverage dispute anyway.  Thus, the lack of a judgment in the bankruptcy proceeding is immaterial.

25.    Defendants also argue they will never have a duty to indemnify because BPX did not file a proof of claim in the BJ Services bankruptcy proceeding and agreed that it would not recover against the estate.  (*Motion*, ¶25).  In *Matter of Edgeworth*, the Fifth Circuit addressed a similar argument and rejected it, noting that "a plaintiff's failure to file in the bankruptcy proceeding should not impair the right to file suit against another party who may be liable on the debt."  993 F.2d 51, 55 (5th Cir. 1993).  The court expressly held that a Section 524(a) injunction under the bankruptcy code does not bar a "liability-fixing" suit to establish an insurer's obligation to make payment "even if a plaintiff has agreed to foreswear recovery from the debtor personally and to look only to the policy proceeds."  *Id.* at 54.  The fact that BPX has agreed to recover only against the insurance proceeds, and not against BJ Services personally, does not preclude BPX from establishing liability under the insurance policies in this action. Defendants' Motion regarding the duty to defend and indemnify should be denied.

II.   **Plaintiff has viable claims for "bad faith" conduct and breach of the Texas Insurance Code.**

26.   Defendants assert that there is no common law duty of good faith in the context of third-party claims. (*Motion*, ¶27). Of course, Texas courts do recognize a duty of good faith owed to insureds under the *Stowers* doctrine. "The common law imposes a duty on liability insurers to settle third-party claims against their insureds when reasonably prudent to do so." *Phillips v. Bramlett*, 288 S.W.3d 876, 879 (Tex. 2009) (citing *G.A. Stowers Furniture Co. v. Am. Indem. Co.*, 15 S.W.2d 544 (Tex. 1929)). *Stowers* rights may be assigned. *See Charles v. Tamez*, 878 S.W.2d 201, 208 (Tex. App.—Corpus Christi 1994, writ denied) ("We recognize that an insured's right to sue for failure to settle is subject to both equitable subrogation and assignment."). New York courts likewise impose duties of good faith in the third-party context related to failure to defend and settle: "The notion that an insurer may be held liable for the breach of its duty of 'good faith' in defending and settling claims over which it exercises exclusive control on behalf of its insured is an enduring principle, well settled in this State's jurisprudence." *Pavia v. State Farm Mut. Auto Ins. Co.*, 626 N.E.2d 24, 26 (N.Y. 1993).

27.   BPX made demand upon BJ Services with respect to the claim, that included a demand for payment of $2,500,000. (*See* Doc. No. 18 at ¶11; Ex. B at pp. 1, 2). Nevertheless, Defendants denied coverage and refused to pay BPX's claim, with apparently very little investigation. These facts are sufficient to state a claim under Texas and New York law in this context.

28.   Defendants assert that any claims under Chapter 541 of the Texas Insurance Code simply cannot be assigned. (*Motion*, ¶¶ 34-35). Even assuming that this general rule is

true, it does not eliminate the possibility of Defendants' liability for continuing breaches after the assignment from BJ Services to BPX. *See Pogo Res., LLC v. St. Paul Fire & Marine Ins. Co.*, No. 3:19-CV-2682-BH, 2022 WL 209276, *16-17 (N.D. Tex. Jan. 24, 2022). Defendants continue to wrongfully deny coverage for BPX's damage.

## III. This Court should exercise its discretion to allow Plaintiff's claims for declaratory relief.

29.     The sole ground raised by Defendants as a reason for this Court to dismiss Plaintiff's claims for declaratory relief is that the claims are duplicative of other claims and therefore "require[] resolution of the exact same issues raised in [BPX's] other causes of action." (*Motion*, ¶ 42).  Defendants argue that dismissing BPX's other causes of action "similarly resolves all of the issues raised in [BPX's] declaratory judgment cause of action." (*Motion*, ¶ 43).  Even if this Court determines that the same issues are raised by BPX's substantive causes of action and its claim for declaratory relief, this Court should nonetheless exercise its discretion and deny Defendants' Motion as to these claims because the issues raised in BPX's declaratory judgment claims address the heart of the parties' disputes.

30.     Federal courts have discretion whether to allow claims for declaratory relief. *E.g., Sherwin-Williams Co. v. Holmes County*, 343 F.3d 383, 389 (5th Cir. 2003) (noting that the Declaratory Judgment Act "is an enabling act, which confers discretion on the courts rather than an absolute right on a litigant").  A federal district court should follow a pragmatic approach when considering whether to exercise jurisdiction over claims for declaratory relief asserted in the alternative with other substantive claims.[6]  *Wilton v. Seven Falls Co.*, 515 U.S.

---

[6]   When declaratory relief is the sole claim asserted, the abstention standard is governed by *Brillhart v. Excess Insurance Co. of America*, 316 U.S. 491, 62 (1942).  Under *Brillhart*, district

277, 288 (1995) ("In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration.").  The Fifth Circuit has identified the factors that should guide a federal district court in considering this question:

    (a)    whether there is a pending state action in which all of the matters in controversy may be fully litigated;

    (b)    whether the plaintiff filed suit in anticipation of a lawsuit filed by the defendant;

    (c)    whether the plaintiff engaged in forum shopping in bringing the suit;

    (d)    whether possible inequities in allowing the declaratory plaintiff to gain precedence in time or to change forums exist;

    (e)    whether the federal court is a convenient forum for the parties and witnesses;

    (f)    whether retaining the lawsuit would serve the purposes of judicial economy; and

    (g)    whether the federal court is being called on to construe a state judicial decree involving the same parties and entered by the court before whom the parallel state suit between the same parties is pending.

*St. Paul Ins. Co. v. Trejo*, 39 F.3d 585, 590-91 (5th Cir.1994).  These factors, often referred to as the Trejo factors, "must be considered *on the record* before a discretionary, nonmerits dismissal of a declaratory judgment action occurs."  *Vulcan Materials Co. v. City of Tehuacana*, 238 F.3d 382, 390 (5th Cir. 2001) (emphasis in original).  As observed by the Fifth Circuit in *Sherwin-Williams*, the *Trejo* factors address the broad concerns of federalism,

---

courts have discretion to dismiss a declaratory judgment action when a parallel suit not governed by federal law and the same issues are pending in state court. *Kelly Inv., Inc. v. Cont'l Common Corp.*, 315 F.3d 494, 497 (5th Cir. 2002).  In the event that this Court were to grant Defendants' Motion to Dismiss as to Plaintiff's substantive claims such that only the claims for declaratory relief remain, the *Brillhart* analysis would not be satisfied because there is no state court lawsuit in which the same issues are present.  Thus, the Motion to Dismiss should be denied as to the claims for declaratory relief.

fairness, and efficiency, and the district court is guided by "considerations of practicality and wise judicial administration." *See* 343 F.3d at 389-91.

31.     Applied to the facts of this case, the *Trejo* factors overwhelmingly support denying Defendants' Motion to Dismiss as to BPX's claims for declaratory relief. First, following Defendants' removal of this lawsuit to federal court, there is no longer a pending state action in which these disputes can be litigated. Second, BPX filed this lawsuit against BJ's insurers, and there is no indication that BPX anticipated BJ's insurers filing a lawsuit addressing these issues. Stated differently, nothing suggests that BPX was trying to beat Defendants to the punch. Third, BPX did not engage in forum shopping. In fact, BPX selected a different forum (state court) and is only before this Court because of Defendants' removal. Fourth, following Defendants' removal, and due to the existence of diversity jurisdiction, there is no ability for BPX to change forums. Neither is there any ability to "gain precedence in time" because this is not a situation in which there are competing lawsuits filed by the parties. Fifth, this Court is located in the same city, state, and county as the forum in which BPX initially filed its lawsuit; thus the federal court is as convenient a forum as any for the parties and witnesses. The sixth factor—whether retaining the lawsuit would serve the purposes of judicial economy—is neutral, because this is the one and only lawsuit between the parties as to these issues. Finally, this Court is not being called on to construe a state judicial decree involving the same parties or otherwise trying to litigate these same issues in any other parallel proceeding.

32.     BPX's claims for declaratory relief address issues at the heart of the dispute between the parties regarding Defendants' perfunctory review and nearly immediate denial of

any responsibility for the claims arising out of BJ Services's damage to the well and BPX's property.  Therefore, whether this Court dismisses none, any, or all of BPX's substantive claims, it should still nonetheless deny Defendants' Motion to Dismiss as to the claims for declaratory relief.

## <u>CONCLUSION AND RELIEF SOUGHT</u>

For the foregoing reasons, Plaintiff respectfully requests that Defendants' Motion to Dismiss (Doc. No. 19) be denied and for all other relief to which Plaintiff may be justly entitled.

Respectfully submitted,

By: _____
     John D. Sullivan
     State Bar No. 19484490
     S.D. No. 3379070
     (713) 634-3620 Direct
     jsullivan@pierceoneill.com
     *Attorney-in-Charge*

PIERCE & O'NEILL, LLP
4203 Montrose Boulevard
Houston, Texas 77006
(713) 634-3600 Main
(713) 634-3601 Fax

***ATTORNEYS FOR PLAINTIFF***
***BPX PRODUCTION COMPANY***

OF COUNSEL:|

Tracy C. Temple
State Bar No. 00793446
S.D. No. 19607
(713) 634-3607 Direct
ttemple@pierceoneill.com

21

Brian K. Tully
State Bar No. 24039217
(713) 634-3608 Direct
btully@pierceoneill.com

PIERCE & O'NEILL, LLP
4203 Montrose Boulevard
Houston, Texas 77006
(713) 634-3600 Main
(713) 634-3601 Fax

## CERTIFICATE OF SERVICE

On July 15, 2022, I filed the foregoing through the Court's CM/ECF system, which will send notice of such to the following counsel of record:

Amanda J. Kujda
Amanda.kujda@hfw.com
Michael E. Carrer
Michael.carrer@hfw.com
HOLMAN FENWICK WILLAN USA LLP
5151 San Felipe, Suite 400
Houston, Texas 77056
*Attorneys for Defendants*

John D. Sullivan

1032696