EX. A, PG. 1

**Energy**

**Policy Number**

  **ENGLO1800981**

**Assured**

  **BJ Services, LLC**

**Reassured**

**File Name**

  **Liabilities arising from the Insured's operations (USD 10mm)**

**For LPSO use**

**For ILU use**

**For LIRMA use**

EX. A, PG. 2



**Unique market reference number**

B0713ENGLO1800981

| RISK DETAILS |
| --- |

| UNIQUE MARKET REFERENCE: | **B0713ENGLO1800981** |
| --- | --- |
| **TYPE:** | Liabilities. |
| **INSURED:** | **BJ Services, LLC and as per Named Insured Schedule.** |
| **INSURED ADDRESS:** | 11211 FM 2920, Tomball, Texas 77375 United States of America |
| **PERIOD:** | From: 1st April 2018, 12:01 a.m. hours Local Standard Time at the Insured's address. |
| | To: 1st April 2019, 12:01 a.m. hours Local Standard Time at the Insured's address. |
| **INTEREST:** | Liabilities arising from the Insured's operations. |
| **LIMITS OF LIABILITY:** | USD 10,000,000 Each "Occurrence" which is always subject to: |
| | USD 10,000,000 Aggregate limit separately in respect of: |
| | (i) "Products Liability" and "Completed Operations Liability" combined; and |
| | (ii) All other coverages combined. |
| | <u>Which in turn excess of Item 2 the attached Schedule of Underlying Insurances or USD 250,000 Self-Insured Retention any Occurrence, whichever the greater.</u> |
| **SITUATION:** | Worldwide. |
| **CONDITIONS:** | **Subject to 2013 Umbrella Policy JL2013/006 amended as follows:** |
| | CGU12OG – Professional Services Exclusion with Consequential Bodily Injury or Property Damage Writeback as attached. |
| | Exclusion 15.(c) amended to 30 days. |
| | Exclusion 15 (iii) deleted. |
| | CGU12X – Saline Substances Endorsement as attached but coverage is always subject to Exclusion 15. of 2013 Umbrella Policy JL2013/006. |
| | Definition 23 (Property Damage) is amended as per the attached. |

Checked

EX. A, PG. 2



**Unique market reference number**

B0713ENGLO1800981

Declaration to 2013 Umbrella Policy Wording amended as follows:

| | | |
|---|---|---|
| Item 3 | : | USD 250,000 any one occurrence |
| Item 6 | : | USD |
| Item 8 | : | Underwriters via Lockton Companies/Lockton Global Energy |
| Item 11 | : | Underwriters |

Supplementary Exclusions B - CGU12Z to apply as attached, however:
Exclusion 4(a) shall not apply to "third party property".

Underground Property Damage Endorsement CGU13J as attached.

CGU 12W – Primary Insurance Endorsement.

CGU 12L – Waiver of Subrogation Endorsement, amended as attached.

Louisiana Anti-Indemnity Statute Endorsement CGU 12 0 E (if and as required) – Additional Premium USD 1,500 per Certificate.

Certificate of Insurance Endorsement as attached.

Institute Radioactive Contamination, Chemical, Biological, Bio-Chemical and Electromagnetic Weapons Exclusions Clause – CL370 as attached.

Institute Cyber Attack Exclusion Clause – CL380 as attached.

Institute Service of Suit Clause – CL355 1/11/92 as attached.

Sanctions Limitations and Exclusions Clause – JL2010/005 15 September 2010 as attached.

Actions Over Indemnity Endorsement – CGU 12 0 A as attached.

NMA 2918 – War and Terrorism Exclusion Endorsement as attached.

Cross Liabilities clause as attached.

**NOTICES:** Texas Complaints Clause LSW1022A and Texas Surplus Lines Clause.

Duty to disclose Material Information
Every proposer or (re)insured when seeking a new policy of (re)insurance or cover for additional risks or renewal under existing policy, must disclose any information that might influence the reinsurers/reinsurers in fixing the premium or determining whether to accept the risk. Failure to do so may entitle insurers/reinsurers to void cover from inception and seek repayment of claims. If you are in any doubt as to whether information is material, you should disclose it. The duty of disclosure is re-imposed when there are changes or variations in cover and when the insurance document is renewed or extended. In addition, changes that substantially increase the



**Unique market reference number**

B0713ENGLO1800981

risk or relate to compliance with a warranty or condition in the insurance document must be notified at once.

| | | |
|---|---|---|
| **CHOICE OF LAW AND JURISDICTION:** | Choice of Law: | The Proper and exclusive Law of this insurance shall be New York Law. |
| | Choice of Jurisdiction: | In accordance with Service of Suit CL355 as attached hereunder. |

Service of Process Upon:
Mendes and Mount (Attorneys)(or their nominees)
750 Seventh Avenue, New York, N.Y 10019-6829
United States of America.

**PREMIUM (100%):**   USD 1,750,000 per annum, allocated as follows:

USA Premium:   97.2397%

Canada Premium:   2.7603%

Additional Premium in respect TRIA as amended 1% per annum or pro-rata subject as applicable to LMA5091 or LMA5092.

Policy holder Disclosure Notice of Terrorism Insurance Coverage LMA9011 as attached.

**PAYMENT TERMS:**   LSW 3000 (60 days / 15 days).

**SUBJECTIVITIES:**   Internal sign-off by Slip Leader in respect to Canadian exposures.

**TAXES PAYABLE BY (RE)ASSURED AND ADMINISTERED BY INSURERS:**   None.

**TAXES PAYABLE BY INSURERS AND ADMINISTERED BY INSURED OR THEIR AGENT:**   None.

**RECORDING, TRANSMITTING & STORING INFORMATION:**   Where the Broker maintains risk and claim data/information/documents the broker may hold data/information/documents electronically.



EX. A, PG. 5



**Unique market reference number**

B0713ENGLO1800981

**INSURER CONTRACT DOCUMENTATION:**

This document details the contract terms entered into by the Insurer(s) and constitutes the contract document.

Any further documentation changing this contract, agreed in accordance with the contract change provisions set out in this contract, shall form the evidence of such change.

EX. A, PG. 6



**Unique market reference number**

B0713ENGLO1800981

## NAMED INSURED SCHEDULE

| Company | FEIN |
|---|---|
| BJ Services, LLC | 81-1373543 |
| CSL Completion Holdings, LLC | 32-0488748 |
| Allied Energy Services, LLC | 81-3388891 |
| Allied Energy Services (Canada) | |
| Allied Energy Services Real Estate, (Canada) | |
| Allied Energy Services Real Estate | |
| Allied Energy JV Contribution, LLC | |
| Allied Completions Holdings, LLC | |
| BJ Services Holdings Canada, ULC (Canada) | 98-1366181 |
| BJ Allied Newco, LLC | None (1) |
| BJ Services Luxembourg S.a.r.l | 98-1366229 |
| BJ Services, Inc. | 30-0976566 |

EX. A, PG. 6

EX. A, PG. 7



**Unique market reference number**

B0713ENGLO1800981

| INFORMATION |
|---|

The following information was provided to insurers to support the assessment of the risk at the time of underwriting:

Casualty Submission seen by participating insurers hereon including the following:
-Exposure Summary
-Location Schedule
-Named Insured Schedule
-Auto Schedule
-Payroll Estimates & Summary
-BJ Energy Services Overview presentation
-BJ Services Loss Runs



**Unique market reference number**

B0713ENGLO1800981

## SCHEDULE OF UNDERLYING INSURANCES

Item 2.          Underlying Insurance(s):

(a) "Bodily Injury", "Personal Injury", "Advertising Injury" and/or "Property Damage" except where a separate amount is specifically shown in (b) – (g) below or is added by endorsement,

| | |
|---|---|
| Any one "Occurrence" without aggregate: | USD 1,000,000 |
| or annual aggregate: | USD 2,000,000 |

(b) "Products Liability" and "Completed Operations Liability" combined:

| | |
|---|---|
| any one "Occurrence" without aggregate: | USD 1,000,000 |
| or annual aggregate: | USD 2,000,000 |

(c) "Employers Liability"

| | |
|---|---|
| any one "Occurrence" without aggregate: | USD 1,000,000 |

(d) "Watercraft Liability"

| | |
|---|---|
| any one "Occurrence" without aggregate: | **USD not covered** |

(e) "Aircraft Liability"

| | |
|---|---|
| any one "Occurrence" without aggregate: | **USD  not covered** |

(f) "Automobile Liability"

| | |
|---|---|
| any one "Occurrence" without aggregate: | USD 1,000,000 |

(g) "Maritime Employers Liability"

| | |
|---|---|
| any one "Occurrence" without aggregate | **USD not covered** |



EX. A, PG. 8

EX. A, PG. 9



Unique market reference number

B0713ENGLO1800981

## PROFESSIONAL SERVICES EXCLUSION WITH CONSEQUENTIAL BODILY INJURY OR PROPERTY DAMAGE WRITEBACK

Exclusion 11 of 2013 Umbrella Policy JL2013/006 is deleted and replaced by the following:

11.  any negligence, error or omission, malpractice or mistake arising out of Professional Services Committed or alleged to have been committed by or on behalf of the "insured" in the connect of any of the "insured's" business activities. Professional Services means the preparation or approval of audits, accounts, maps, plans, opinions, reports, surveys, designs or specifications and supervisory, inspection, engineering, or data processing services.

This exclusion does not apply to "bodily injury" or "property damage" that results directly from such Professional Services in connection with the "insured's" capacity as an **Oil Field Services Company.**

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

CGU 12 O G



EX. A, PG. 9

EX. A, PG. 10



**Unique market reference number**

B0713ENGLO1800981

## SALINE SUBSTANCES ENDORSEMENT

Exclusion 16 of 2013 Umbrella Policy JL2013/006 shall not apply to saline waste produced in the normal course of the insured's operations provided that all other terms of 2013 Umbrella Policy JL2013/006 are shown by the insured to have been met.

CGU12X (amended)

EX. A, PG. 11



**Unique market reference number**

B0713ENGLO1800981

## AMENDMENT TO DEFINITION 23 (PROPERTY DAMAGE)

The following words are added to the end of Definition 23 (Property Damage):
"loss of use of the tangible property which has not been physically lost, damaged or destroyed, proving such loss of use is consequent upon tangible property damage for which the "Insured" is legally or contractually liable".



EX. A, PG. 12



Unique market reference number

B0713ENGLO1800981

## SUPPLEMENTARY EXCLUSIONS B

**NOTWITHSTANDING ANYTHING TO THE CONTRARY CONTAINED IN THIS INSURANCE THIS INSURANCE IS SUBJECT TO THE FOLLOWING ADDITIONAL EXCLUSIONS AND THIS INSURANCE DOES NOT APPLY TO:**

1.  any liability for

    a.  loss of or damage to any well or hole

        (i)   which is being drilled or worked over by or on behalf of the Insured,
        or
        (ii)  which is in the care custody or control of the Insured,
        or
        (iii) in connection with which the Insured has provided services, equipment or materials.

    b.  any cost or expense incurred in the redrilling or restoring of any such well or any substitute well or hole.

2.  any liability for loss of or damage to any drilling tool, pipe, collar, casing, bit, pump, drilling or well servicing machinery, or any other equipment while it is below the surface of the earth in any well or hole

    a.  which is being drilled or worked over by or on behalf of the Insured,
    or
    b.  which is in the care custody or control of the Insured,
    or
    c.  in connection with which the Insured has provided services, equipment or materials.

3.  any liability for costs and expenses incurred in, or incidental to

    a.  controlling or bringing under control any wells or holes,
    or
    b.  extinguishing fire in or from any wells or holes,
    or
    c.  drilling relief wells or holes, whether or not the relief wells or holes are successful.

4.  any liability for costs and expenses incurred in, or incidental to

    a.  the raising, removal or destruction of any wreckage, debris or obstruction, however caused, whether or not the property of the Insured, and whether or not such raising, removal or destruction is required by law, contract or otherwise,

    b.  the removal or recovery of any drilling tool, pipe, collar, casing, bit, pump, drilling or well servicing machinery or any other equipment while it is below the surface of the earth in any well or hole.



EX. A, PG. 12



**Unique market reference number**

B0713ENGLO1800981

5.  any liability for loss of or damage to sub-surface oil, gas, water, or other substance or material, or the cost or expense of reducing to physical possession above the surface of the earth any oil, gas, water, or other substance or material, or expense incurred or rendered necessary to prevent or minimise such loss or damage.

6.  any liability for damages to any Co-owner of a working interest with respect to such working interest. As used in this exclusion, the term "Co-owner of a working interest" means any person or entity working with the Insured, a Co-owner, joint venturer or mining partner in mineral properties who participates in the operating expense of such properties or revenues therefrom, or who has the right to participate in the control, development or operation of such properties

CGU12Z

LOCKTON

**Unique market reference number**

B0713ENGLO1800981

## UNDERGROUND PROPERTY DAMAGE ENDORSEMENT

Notwithstanding exclusion 5. of the Supplementary Exclusions B attached to this policy, the exclusion shall not apply to "property damage" included within the "underground property damage hazard" provided that the Insured establishes that all of the following conditions have been met:

A. The "occurrence" was accidental and was neither expected nor intended by the Insured. An accident shall not be considered unintended or unexpected unless caused by some intervening event neither expected nor intended by the Insured.

B. The "occurrence" can be identified as commencing at a specific time and date during the term of this policy.

C. The "occurrence" became known to the Insured within 30 days after its commencement and is reported to insurers within 60 days thereafter.

D. The "occurrence" did not result from the Insured's intentional and wilful violation of any government statue, rule or regulation.

Exclusions 1, 2 and 3 of the Supplementary Exclusions B attached to this policy shall only apply in respect of any well or hole in which the insured has an ownership or financial interest or in respect of operations performed by the insured under a Turnkey contract. Coverage by this paragraph is subject to conditions A, B, C, and D above.

**Limits of Liability:**

USD 10,000,000 Aggregate Limit. Nothing contained herein shall operate to increase our total limit of liability stated in the Declarations attached to this Policy. This is not a separate aggregate and is subject to the remaining available balance of the applicable aggregate limit being:

~~A. The General Aggregate, or~~

B. The all other coverage combined aggregate.

**Definition**

"underground property damage hazard" means "property damage" to oil, gas, acquifer or other mineral substances which have not been reduced to physical possession above the surface of the earth or above the surface of any body of water.

**Agreement in connection with Blow-outs or Cratering of Wells**

A. Upon the occurrence of a blow-out or cratering of any oil, gas or water well resulting from or in connection with operations performed by or on behalf of the named Insured, the named Insured hereby agrees that:

1) Where the insured is operator or joint operator of the well, it will, at its own cost and expense, use due and reasonable diligence to take all such prompt steps for the purpose of controlling or bringing under control such well.





**Unique market reference number**

B0713ENGLO1800981

2)   Where the insured holds a non-operating interest in the well, it will endeavour to see that the operator uses due and reasonable diligence to take all such prompt steps for the purpose of controlling or bringing under control such well.

In the event of failure or delay of the insured to comply with the obligations of this agreement, insurers shall not be liable for any "property damage" included within the "underground property damage hazard" resulting from the blowout or cratering of any such well.

B.   Express Agreement in respect of exclusions 1, 2, 3 and 5 of the Supplementary Exclusions B

Unless otherwise agreed by insurers in writing, the insured agrees through written contract to contract out of all responsibilities covered by this limited writeback of coverage other than for gross negligence exceptions.

Coverage hereon will not apply if the inured has failed to obtain contractual protection from an operator of any well or hole. Coverage will continue if a contact is ruled invalid by a court of competent jurisdiction.

All other terms of this Policy remain unchanged.

CGU13J



EX. A, PG. 16



**Unique market reference number**

B0713ENGLO1800981

## PRIMARY INSURANCE ENDORSEMENT

Where you are named as an additional Insured on the policy(ies) of others, this insurance shall only apply in excess of and shall not be contributory with other said policy(ies).

Notwithstanding the above or any other clauses contained within this insurance where required by written contract this insurance shall be primary to any other valid and collectable insurance.

CGU 12W



EX. A, PG. 16



**Unique market reference number**

B0713ENGLO1800981

## WAIVER OF SUBROGATION ENDORSEMENT

We agree to waive our rights of subrogation against any principal where waiver is required by written contract but only in respect of liability for Bodily Injury and/or Property Damage arising out of operations performed by you and only to the extent required under said written contract.

CGU 12L



**Unique market reference number**

B0713ENGLO1800981

## CERTIFICATE OF INSURANCE ENDORSEMENT

In consideration of the premium charged hereunder, Underwriters understand that in the course of their business the Insured is required to furnish evidence of Insurance that is provided by this policy to various third-parties. Underwriters hereby authorize Lockton Companies to issue Certificates of Insurance describing the insurance provided hereunder subject to all terms, exclusions and conditions of this policy.

These Certificates of Insurance may be issued without showing deductibles or retentions which may be applicable, but in so doing it is expressly understood and agreed that such deductibles or retentions shall continue to apply in the event of loss(es) arising out of the operation(s) for which the certificate(s) is (are) issued.

Lockton have the responsibility to send any notice of cancellation to the Insured or any third parties, if and as applicable.

EX. A, PG. 18



**Unique market reference number**

B0713ENGLO1800981

### INSTITUTE RADIOACTIVE CONTAMINATION, CHEMICAL, BIOLOGICAL, BIO-CHEMICAL AND ELECTROMAGNETIC WEAPONS EXCLUSION CLAUSE CL 370

**This clause shall be paramount and shall override anything contained in this insurance inconsistent therewith**

1. In no case shall this insurance cover loss damage liability or expense directly or indirectly caused by or contributed to by or arising from

    1.1 ionising radiations from or contamination by radioactivity from any nuclear fuel or from any nuclear waste or from the combustion of nuclear fuel

    1.2 the radioactive, toxic, explosive or other hazardous or contaminating properties of any nuclear installation, reactor or other nuclear assembly or nuclear component thereof

    1.3 any weapon or device employing atomic or nuclear fission and/or fusion or other like reaction or radioactive force or matter

    1.4 the radioactive, toxic, explosive or other hazardous or contaminating properties of any radioactive matter. The exclusion in this sub-clause does not extend to radioactive isotopes, other than nuclear fuel, when such isotopes are being prepared, carried, stored, or used for commercial agricultural, medical, scientific or other similar peaceful purposes

    1.5 any chemical, biological, bio-chemical, or electromagnetic weapon.

CL 370

EX. A, PG. 20



**Unique market reference number**

B0713ENGLO1800981

### INSTITUTE CYBER ATTACK EXCLUSION CLAUSE CL 380

1.1 Subject only to clause 1.2 below, in no case shall this insurance cover loss damage liability or expense directly or indirectly caused by or contributed to by or arising from the use or operation, as a means for inflicting harm, of any computer, computer system, computer software programme, malicious code, computer virus or process or any other electronic system.

1.2 Where this clause is endorsed on policies covering risks of war, civil war, revolution, rebellion, insurrection, or civil strife arising there from, or any hostile act by or against a belligerent power, or terrorism or any person acting from a political motive, Clause 1.1 shall not operate to exclude losses (which would otherwise be covered) arising from the use of any computer, computer system or computer software programme or any other electronic system in the launch and/or guidance system and/or firing mechanism of any weapon or missile.

CL 380

EX. A, PG. 21



**Unique market reference number**

B0713ENGLO1800981

## SANCTION LIMITATION AND EXCLUSION CLAUSE

No (re)Insurer shall be deemed to provide cover and no (re)insurer shall be liable to pay any claim or provide any benefit hereunder to the extent that the provision of such cover, payment of such claim or provision of such benefit would expose that (re)insurer to any sanction, prohibition or restriction under United Nations resolutions or the trade or economic sanctions, laws or regulations of the European Union, United Kingdom or United States of America.

**JL2010/005**
**15 September 2010**



EX. A, PG. 21



**Unique market reference number**

B0713ENGLO1800981

## INSTITUTE SERVICE OF SUIT CLAUSE (U.S.A.)

It is agreed that in the event of the failure of the Underwriters severally subscribing this insurance (the Underwriters) to pay any amount claimed to be due hereunder, the Underwriters, at the request of the Assured, will submit to the jurisdiction of a court of competent jurisdiction within the United States of America.

Notwithstanding any provision elsewhere in this insurance relating to jurisdiction, it is agreed that the Underwriters have the right to commence an action in any court of competent jurisdiction in the United States of America, and nothing in this clause constitutes or should be understood to constitute a waiver of the Underwriters' rights to remove an action to a United States Federal District Court or to seek remand therefrom or to seek a transfer of any suit to any other court of competent jurisdiction as permitted by the laws of the United States of America or any state therein.

Subject to the Underwriters' rights set forth above:

(a)     It is further agreed that the Assured may serve process upon any senior partner in the firm of:

**Mendes & Mount (Attorneys), 750 Seventh Avenue, New York, N.Y. 10019-6829**

and that in any suit instituted against any one of them upon this contract the Underwriters will abide by the final decision of the Court or of any Appellate Court in the event of an appeal.

(b)     The above-named are authorized and directed to accept service of process on behalf of Underwriters in any such suit and/or upon the request of the Assured to give a written undertaking to the Assured that they will enter a general appearance upon the Underwriters' behalf in the event such a suit shall be instituted.

(c)     The right of the Assured to bring suit as provided herein shall be limited to a suit brought in its own name and for its own account. For the purpose of suit as herein provided the word Assured includes any mortgagee under a ship mortgage which is specifically named as a loss payee in this insurance and any person succeeding to the rights of any such mortgagee.

(d)     Further, pursuant to any statute of any state, territory or district of the United States of America which makes provision therefor, Underwriters hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office (the Officer), as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Assured or any beneficiary hereunder arising out of this contract of insurance, and hereby designate the above-named as the person to whom the Officer is authorized to mail such process or a true copy thereof.

**If this clause is attached to a contract of reinsurance the terms insurance and Assured shall mean reinsurance and Reassured respectively.**

1/11/92
CL355  © Copyright The Institute of London Underwriters



EX. A, PG. 23



**Unique market reference number**

B0713ENGLO1800981

## ACTIONS OVER INDEMNITY ENDORSEMENT

Subject to all of the terms of this insurance, we will pay amounts for which you shall become liable to pay, on account of investigation, defense and indemnity as respects your responsibilities, if any, to third parties by virtue of defense and indemnity obligations assumed under written contract or agreement and arising from "bodily injury" of any of your "employees" except insofar as same may arise from occupational disease.

CGU 12 0 A

EX. A, PG. 24



**Unique market reference number**

B0713ENGLO1800981

## WAR AND TERRORISM EXCLUSION ENDORSEMENT

Notwithstanding any provision to the contrary within this insurance or any endorsement thereto it is agreed that this insurance excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with any of the following regardless of any other cause or event contributing concurrently or in any other sequence to the loss;

(1)     War, invasion, acts of foreign enemies, hostilities or warlike operations (whether war be declared or not), civil war, rebellion, revolution, insurrection, civil commotion assuming the proportions of or amounting to an uprising, military or usurped power; or

(2)     any act of terrorism.
        For the purpose of this endorsement an act of terrorism means an act, including but not limited to the use of force or violence and/or the threat thereof, of any person or group(s) of persons, whether acting alone or on behalf of in connection with any organisation(s) or government(s), committed for political, religious, ideological or similar purposes including the intention to influence any government and/or to put the public, or any section of the public, in fear.

This endorsement also excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with any action taken in controlling, preventing, suppressing or in any way relating to (1) and/or (2) above.

If the Underwriters allege that by reason of this exclusion, any loss, damage, cost or expense is not covered by this insurance the burden of proving the contrary shall be upon the Assured.

In the event any portion of this endorsement is found to be invalid or unenforceable, the remainder shall remain in full force and effect.

**NMA2918**
**08/10/2001**

EX. A, PG. 24

EX. A, PG. 25



**Unique market reference number**

B0713ENGLO1800981

## LOUISIANA ANTI-INDEMNITY STATUTE ENDORSEMENT

In consideration of an additional premium as detailed below and paid to us by the indemnified party(ies), the indemnified party(ies) as required by written contract is/are named as additional insured but only in respect of legal liability for which the indemnified party(ies) would be indemnified under the terms of the applicable contract in absence of the Louisiana Anti-indemnity Act.

You shall maintain records of all such Indemnity Agreements entered into and shall provide to us a list in writing of all such agreements made within 30 days of the expiration date of the policy to which this endorsement attaches.

Nothing contained in this Endorsement shall extend this policy to cover any actual or alleged liability that would not have been covered had this endorsement not been attached to this policy.

Additional Premium per Certificate: USD 1,500

CGU 12 0 E – 14.12.12



**Unique market reference number**

B0713ENGLO1800981

## CROSS LIABILITIES

In the event of one of the Insureds incurring liability to any other of the Insureds, this policy shall cover the Insured against whom claims is or may be made in the same manner as if separate policies had been issued to each Insured. Nothing contained herein shall operate to increase Underwriters' limit of liability as set forth in this policy.



**Unique market reference number**

B0713ENGLO1800981

## SECURITY DETAILS

**INSURERS'
LIABILITY (LMA 3333):**

**Insurers' liability several not joint**

The liability of an insurer under this contract is several and not joint with other insurers party to this contract. An insurer is liable only for the proportion of liability it has underwritten. An Insurer is not jointly liable for the proportion of liability underwritten by any other insurer. Nor is an insurer otherwise responsible for any liability of any other insurer that may underwrite this contract.

The proportion of liability under this contract underwritten by an insurer (or, in the case of a Lloyd's syndicate, the total of the proportions underwritten by all the members of the syndicate taken together) is shown next to its stamp. This is subject always to the provision concerning "signing" below.

In the case of a Lloyd's Syndicate, each member of the syndicate (rather than the syndicate itself) is an insurer. Each member has underwritten a proportion of the total shown for the syndicate (that total itself being the total of the proportions underwritten by all the members of the syndicate taken together). The liability of each member of the syndicate is several and not joint with other members. A member is liable only for that member's proportion. A member is not jointly liable for any other member's proportion. Nor is any member otherwise responsible for any liability of any other insurer that may underwrite this contract. The business address of each member is Lloyd's One Lime Street, London EC3M 7HA. The identity of each member of a Lloyd's syndicate and their respective proportion may be obtained by writing to Market Services, Lloyd's, at the above address.

**Proportion of liability**

Unless there is "signing" (see below), the proportion of liability under this contract underwritten by each insurer (or, in the case of Lloyd's Syndicate, the total of the proportions underwritten by all the members of the syndicate taken together) is shown next to its stamp and is referred to as its "written line".

EX. A, PG. 28



**Unique market reference number**

B0713ENGLO1800981

Where this contract permits, written lines, or certain written lines, may be adjusted ("signed"). In that case a schedule is to be appended to this contract to show the definitive proportion of liability under this contract underwritten by each insurer (or, in the case of a Lloyd's syndicate, the total of the proportions underwritten by all the members of the syndicate taken together). A definitive proportion (or, in the case of a Lloyd's Syndicate, the total of the proportions underwritten by all the members of a Lloyd's syndicate taken together) is referred to as a "signed line". The signed lines shown in the schedule will prevail over the written lines unless a proven error in calculation has occurred.

Although reference is made at various points in this clause to "this contract" in the singular, where the circumstances so require this should be read as a reference to contracts in the plural.

**ORDER HEREON:**      100% of 100%.

**BASIS OF
WRITTEN LINES:**      Percentage of Whole

**SIGNING PROVISIONS:**      In the event that the written lines hereon exceed 100% of the order, any lines written "to stand" will be allocated in full and all other lines will be signed down in equal proportions so that the aggregate signed lines are equal to 100% of the order without further agreement of any of the insurers.

However:

a) in the event that the placement of the order is not completed by the commencement date of the period of insurance then all lines written by that date will be signed in full;

b) the Assured may elect for the disproportionate signing of insurers' lines, without further specific agreement of insurers, providing that any such variation is made prior to the commencement date of the period of insurance, and that lines written "to stand" may not be varied without the documented agreement of those insurers;

c) the signed lines resulting from the application of the above provisions can be varied, before or after the commencement date of the period of insurance by the documented agreement of the Assured and all insurers whose lines are to be varied. The variation to the contracts will take effect only when such insurers have agreed, with the resulting variation in signed lines commencing from the date set out in that agreement.

**LINE CONDITIONS:**      None.



EX. A, PG. 28

EX. A, PG. 29

 **LOCKTON**

Unique market reference number

B0713ENGLO1800981

---

### SECURITY DETAILS

In a co-insurance placement, following (re)insurers may, but are not obliged to, follow the premium charged by the Slip Leader.

(Re)insurers may not seek to guarantee for themselves terms as favourable as those which others subsequently achieve during the placement.

| | | | |
|---|---|---|---|
| 80.000% | | Liberty Mutual Insurance Europe Limited | ~~LOAA1H4M004~~ LOAA1H5B00416 |

5.000%      1183      TAL

2.500%      1861      ATL

10.000%     1969      APL

2.500%      1884      TSS

29/3/18

### FDO Signing Number and Dates - Lloyds - Section ~~1~~ 2

| | |
|---|---|
| 5136902/02/2018 | EG |
| 5137002/02/2018 | EH |
| 5137102/02/2018 | 2E |
| 5137202/02/2018 | G |
| 5137302/02/2018 | GC |
| 5137402/02/2018 | 3T |
| 6231102/02/2018 | EA |
| 6231202/02/2018 | EB |
| 6231302/02/2018 | 4E |
| 6231402/02/2018 | TO |

EX. A, PG. 29



Unique market reference number

B0713ENGLO1800981

## SECURITY DETAILS

**In respect to Canadian exposures only:**

| 80.000% | 4472 | LIB |

| 2 | 8 | 0 | 0 | 4 | 4 | 0 | 1 | 8 | L | K |

*Jr (LA) 29|8|18*
*P.S.*

| 5.000% | 1183 | TAL | As per original references stated for this bound risk. |

| 2.500% | 1861 | ATL | As per original references stated for this bound risk. |

| 10.000% | 1969 | APL | As per original references stated for this bound risk. |

| 2.500% | 1884 | TSS | As per original references stated for this bound risk. |

### FDO Signing Number and Dates - Lloyds - Section 1
### (Canadian Exposure Only)

| 5135702/02/2018 | EG |
|---|---|
| 5135802/02/2018 | EH |
| 5135902/02/2018 | 2E |
| 5136002/02/2018 | G |
| 5136102/02/2018 | GC |
| 5136202/02/2018 | 3T |
| 6230302/02/2018 | EA |
| 6230402/02/2018 | EB |
| 6230502/02/2018 | 4E |
| 6230602/02/2018 | TO |



Unique market reference number

B0713ENGLO1800981

## SUBSCRIPTION AGREEMENT

**SLIP LEADER:**                Liberty Mutual Insurance Europe Limited

**BASIS OF
AGREEMENT
TO CONTRACT
CHANGES:**

GUA (October 2001) with Marine Energy Schedule (June 2003).

Any extensions to premium payment conditions are to be agreed by the slip leader only.

When details of agreed endorsements are required to be provided to following Insurers, e-mail can be used by Lockton Companies LLP Wording Agreement:

In all circumstances, Wording and/or wording Addenda to be agreed by Slip Leader only, whose agreement shall be binding on all other insurers hereon.

Any amendments to Insurers Signed Lines up to but not exceeding written line to be agreed by the Slip Leader as defined herein whose agreement shall be binding upon all other Insurers hereon.

Wherever practicable, between the broker and each (re)insurer which have at any time the ability to send and receive ACORD messages:

1.   the broker agrees that any proposed contract change will be requested via an 'ACORD message' or using an ACORD enabled electronic trading platform;

2.   whilst the parties may negotiate and agree any contract change in any legally effective manner, each relevant (re)insurer agrees to respond via an appropriate 'ACORD message' or using an ACORD enabled electronic trading platform;

3.   where a (re)insurer has requested to receive notification of any contract change the broker agrees to send the notification via an 'ACORD message' or using an ACORD enabled electronic trading platform.

**OTHER AGREEMENT
PARTIES FOR
CONTRACT CHANGES
FOR PART 2 GUA:**        Slip Leader only to agree part two changes.

**AGREEMENT
PARTIESFOR
CONTRACT CHANGES
FOR THEIR
PROPORTION ONLY**        None.

EX. A, PG. 32



**Unique market reference number**

B0713ENGLO1800981

**BASIS OF CLAIMS AGREEMENT:**

Claims to be managed in accordance with:

i)   The Lloyd's Claims Scheme (Combined), or as amended or any successor thereto.

ii)  IUA claims agreement practices.

iii) The practices of any company(ies) electing to agree claims in respect of their own participation.

**CLAIMS AGREEMENT PARTIES:**

i)   For Lloyd's syndicates

The leading Lloyd's syndicate and, where required by the applicable Lloyd's Claims Scheme, the second Lloyd's syndicate and/or the Scheme Service Provider.

The second Lloyd's Syndicate is _____

ii)  Those companies acting in accordance with the IUA claims agreement practices, excepting those that may have opted out via iii below.

iii) Those companies that have specifically elected to agree claims in respect of their own participation.

_____

iv)  All other subscribing insurers that are not party to the Lloyd's/IUA claims agreement practices, each in respect of their own participation.

**CLAIMS ADMINISTRATION:**

Where appropriate, Lockton Companies LLP and insurers agree that any claims hereunder (including any claims related costs/fees) will be notified and administered via ECF with any payment(s) processed via CLASS, unless both parties agree to do otherwise.

All overseas markets to settle by telegraph transfer.



EX. A, PG. 32



**Unique market reference number**

B0713ENGLO1800981

| | |
|---|---|
| **RULES AND EXTENT OF ANY OTHER DELEGATED CLAIMS AUTHORITY:** | None, unless otherwise specified by any of the claims agreement parties shown above. |
| **EXPERT(S) FEES COLLECTION:** | In respect of Claims related experts Fees: |

Xchanging 'Experts Fees Service' or similar third party collection agency to be used as service provider for all slip security, including overseas insurers.

Where the broker collects any expert fees the following to apply in all cases:

**The following terms covering treatment of money shall NOT apply to any Lloyd's Managing Agent who have all agreed specific Terms of Business with Lockton Companies LLP ("LCLLP").   These terms shall ONLY apply to Insurance Companies or Underwriting Agents ('Underwriters') who do NOT have a current Terms of Business or letter agreement in place with LCLLP, as follows:**

Where LCLLP holds claims adjustment, legal, survey or other experts fee monies that it receives from Underwriters for onward payment, the Broker will hold such fee monies on behalf of Underwriters and not the client.  It is a requirement of English law (as specified in the FCA Client Assets Sourcebook 'CASS') that Risk Transfer shall apply and that Underwriters shall hereby agree and consent to "the Broker co-mingling such experts fee monies in its client non-statutory trust account and that Underwriters rights to such monies shall be subordinated to those of the Brokers other clients".

**SETTLEMENT DUE DATE:**   31st May 2018





**Unique market reference number**

B0713ENGLO1800981

INSTALMENT
PREMIUM PERIOD
OF CREDIT:                None.

ADJUSTMENT
PREMIUM PERIOD
OF CREDIT:                None.

BUREAUX
ARRANGEMENTS:             IUA Companies agree waive submission of policy document
to XIS and authorise leading IUA Company to sign a collective
policy on their behalf.
Delinked accounts to be presented by Lockton Companies LLP
to LPSO/XIS (Ins-sure).
Where Settlement Due Date (SDD), Premium Payment
Condition (PPC) or Premium Payment Warranty (PPW) due
date falls on a weekend or bank holiday, presentation to
LPSO/XIS (Ins-Sure) or Insurer(s) hereon as applicable on next
working day will be deemed compliant with SDD, PPC or PPW.
Where the PPC/PPW is later than the SDD, the SDD is
automatically deemed updated to be the same as the
PPC/PPW.
Insurer(s) agree to accept/settle accounts at rate of exchange
declared by Lockton Companies LLP.
If a convertible currency applies, reinsurers authorise
Xchanging to accept settlement currency in GBP or USD.
Insurer(s) to sign any deferred premium instalments as
Additional Premium(s); however, any annual instalments to be
allocated to respective year of accounts.
If applicable, Reinsurers agree that the broker may release
delinked premiums for this contract into settlement at different
times.
IUA companies not domiciled in London agree authorise XIS
slip endorsements without sight of reinsurers agreement.
Lockton Companies LLP to note on endorsement date of
reinsurers written agreement.

**Premium Processing Clause (LSW3003)**

Where the premium is to be paid through XChanging Ins-sure
Services (XIS), payment to (Re)Insurers will be deemed to
occur on the day that a delinked premium is released for
settlement by the Appointed Broker or in the case of non-
delinked premium, on the day that the error-free Premium
Advice Notice (PAN) is submitted to XIS.

Where premiums are to be paid by instalments under the
Deferred Accounts Scheme, and the Appointed Broker does not
receive the premium in time to comply with the agreed
settlement due date for the second or subsequent instalment,
the Appointed Broker, if electing to suspend the automatic
debiting of the relevant deferred, shall advise the Slip Leader in
writing and instruct XIS accordingly.  XIS shall then notify



**Unique market reference number**

B0713ENGLO1800981

(Re)Insurers.  Payment to any entity within the same group of companies as the Appointed Broker will be deemed to be payment to the Appointed Broker.

Nothing in this clause shall be construed to override the terms of any Premium Payment Warranty or Clause or any Termination or Cancellation provision contained in this contract. Furthermore, any amendment to the Settlement Due Date of a premium instalment as a result of the operation of this Premium Processing Clause shall not amend the date that such instalment is deemed to be due for the purposes of such Premium Payment Warranty or Clause or Termination or Cancellation provision unless (Re)Insurers expressly agree otherwise.

**NON-BUREAUX ARRANGEMENTS:**

In the event of there being more than one Reinsured, Reinsurers hereon agree to sign separate slip policy each reinsured if required and further agree allow allocation of security to individual Reinsured's as required.

Insurer(s) agree to accept/settle accounts at rate of exchange obtained and declared by Lockton Companies LLP.

Where settlement due date, Premium Payment Condition (PPC) or Premium Warranty (PPW) due date falls on a weekend or bank holiday, payment to Insurer(s) hereon as applicable on next working day will be deemed compliant with PPC or PPW.

Closings may be issued on a net equivalent downwards basis if required by Lockton Companies LLP.



Unique market reference number

B0713ENGLO1800981

## FISCAL AND REGULATORY

**TAX PAYABLE
BY INSURER(S):**  None.

**COUNTRY OF ORIGIN:**  United States of America.

**OVERSEAS BROKER:**  Lockton Companies, LLC
3657 Briarpark Dr., Suite 700,
Houston 77042, Texas,
United States of America.

Other than in respect of Canadian operations which is:
BFL Canada Insurance Services Inc.
200. 1167 Kensington Crescent NW Calgary,
Alberta T2N 1X7, Canada.

**SURPLUS LINES
BROKER:**  Lockton Companies, LLC
444 W. 47th Street, Suite 900,
Kansas City, Missouri 64112,
United States of America.

License Number: 330512.

**STATE OF FILING:**  Texas.

**US CLASSIFICATION:**  Surplus Lines.

**ALLOCATION OF
PREMIUM TO CODING:**  EB – 100%

**REGULATORY
CLIENT
CLASSIFICATION:**  Large Risk.



Unique market reference number

B0713ENGLO1800981

## BROKER REMUNERATION & DEDUCTIONS

**FEE PAYABLE**
**BY CLIENT:**          No.

**TOTAL BROKERAGE:**    Nil.

**OTHER DEDUCTIONS**
**FROM PREMIUM:**       None.



EX. A, PG. 38

B0713ENGLO1800981

## DECLARATIONS TO 2013 UMBRELLA POLICY

**Item 1.** **Name and Address of the Named Insured:**

BJ Services, LLC.

11211 FM 2920,
Tomball, Texas 77002,
United States of America.

**Item 2.** **Underlying Insurance(s):**

(a) "Bodily Injury", "Personal Injury", "Advertising Injury" and/or "Property Damage" except where a separate amount is specifically shown in (b)-(g) below or is added by endorsement,

| | |
|---|---|
| any one "Occurrence" without aggregate: | USD 1,000,000 |
| or annual aggregate: | USD 2,000,000 |

(b) "Products Liability" and "Completed Operations Liability" combined:

| | |
|---|---|
| any one "Occurrence" without aggregate: | USD 1,000,000 |
| or annual aggregate: | USD 2,000,000 |

(c) "Employers Liability"

| | |
|---|---|
| any one "Occurrence" without aggregate: | USD 1,000,000 |

(d) "Watercraft Liability"

| | |
|---|---|
| any one "Occurrence" without aggregate: | USD not covered |

(e) "Aircraft Liability"

| | |
|---|---|
| any one "Occurrence" without aggregate: | USD not covered |

EX. A, PG. 38

(f)   "Automobile Liability"

any one "Occurrence" without aggregate:         USD 1,000,000

(g)   "Maritime Employer's Liability"

any one "Occurrence" without aggregate:         USD not covered

**Item 3.    Self Insured Retention in respect of any one "Occurrence":**

USD 250,000

**Item 4.    Limits of Liability:**

(a)  Limit in respect of any one "Occurrence" which is always subject to (b) below:

USD 10,000,000

(b)  Aggregate limit separately in respect of:

(i)   "Products Liability" and "Completed Operations Liability" combined:

USD 10,000,000

(ii)  All other coverages combined:

USD 10,000,000



EX. A, PG. 39

**Item 5.**   **Policy Period:**

    (a) Inception date:      1st April 2018, 12:01 a.m. hours Local Standard Time at the Insured's address.

    (b) Expiry date:        1st April 2019, 12:01 a.m. hours Local Standard Time at the Insured's address.

**Item 6.**   **Currency:**

    (a) Premiums:

        USD

    (b) Indemnity payments:

        USD

**Item 7.**   **Premium:**

    (a) USD 1,750,000 per annum

    (b) Payable on (dates):

        60 days from inception.

**Item 8.**   **Payment of Premium to:**

    Underwriters via Lockton Companies/Lockton Global Energy

**Item 9.**   **Indemnity Payments to:**

    BJ Services

**Item 10.**   **Service of Suit:**

    Institute Service of Suit Clause (U.S.A) CL355, as attached hereunder.



EX. A, PG. 41

**Item 11.    Notice of Occurrence:**

> Underwiters

**Item 12.    Choice of Law and /Jurisdiction:**

> (a)    Law:          The Proper and exclusive Law of insurance shall be New York Law.
>
> (b)    Jurisdiction:    In accordance with the Service of Suit CL355, as attached hereunder.

EX. A, PG. 41

**2013 UMBRELLA POLICY**

**THIS IS AN EXCESS LIABILITY POLICY.  PLEASE READ THE ENTIRE DOCUMENT CAREFULLY.  SOME WORDS CONTAINED HEREIN HAVE SPECIFIC MEANING. PLEASE REFER TO THE DEFINITIONS SECTION.**

**I.    INSURING AGREEMENTS**

**1.  COVERAGE**

In consideration of the payment of the premium set out in Item 7 of the Declarations and in reliance upon the proposal for this policy (hereinafter Policy), statements made, and any supplementary information pertaining to the proposal which are all deemed incorporated herein, Underwriters agree, subject to the Insuring Agreements, Conditions, Exclusions, Definitions and Declarations contained in this Policy, to indemnify the "Insured" in respect of its operations anywhere in the World, and any "Additional Insured" as far as applicable for "Ultimate Net Loss" by reason of liability:

(a)  imposed upon the "Insured" by law or

(b)  assumed by the "Insured" under an "Insured Contract",

for damages in respect of:

(i)     "Bodily Injury"

(ii)    "Personal Injury"

(iii)   "Property Damage"

(iv)    "Advertising Injury",

caused by or arising out of an "Occurrence" during the Policy Period as set out in Item 5 of the Declarations.

Nothing contained in this Policy shall make this Policy subject to the terms of any other insurance.



EX. A, PG. 43

2.  **LIMITS OF LIABILITY**

Underwriters shall only be liable for "Ultimate Net Loss" in excess of:

(a)  the Underlying Insurance(s) set out in Item 2 of the Declarations, or,

(b)  the Self Insured Retention set out in Item 3 of the Declarations,

whichever is the greater and then only up to the amount stated in Item 4(a) of the Declarations in respect of any one "Occurrence".
Regardless of the number of "Occurrences" that may be covered by this Policy Underwriters' total Limits of Liability shall not exceed the amount of "Ultimate Net Loss" set out in Item 4(b) of the Declarations in the aggregate separately in respect of:

(i)  "Products Liability" and "Completed Operations Liability" combined,

(ii)  All other coverages combined,

for each annual period.

The inclusion or addition hereunder of more than one "Insured" and/or "Additional Insured" shall not increase Underwriters' Limits of Liability as set out in Item 4 of the Declarations.

3.  **UNDERLYING INSURANCE(S)/SELF INSURED RETENTION**

Regardless of the number of "Occurrences" that may be covered by this Policy:

(a)  where the Underlying Insurance(s) is any one "Occurrence" the "Insured" shall always be liable for either the Underlying Insurance(s) or the Self Insured Retention, whichever is the greater, in respect of each and every "Occurrence;"

(b)  where the Underlying Insurance(s) is in the aggregate, the "Insured" shall always be liable for the remaining Underlying Insurance(s) or the Self Insured Retention, whichever is the greater, in respect of each and every "Occurrence".

The Self Insured Retention shall be subject to no aggregate limitation regardless of the number of "Occurrences" that may be covered by this Policy.

Any Underlying Insurance(s) which are self insured and the Self Insured Retention shall only be impaired or exhausted by damages which would, except for the amount thereof, be insured by this Policy.

The "Insured" shall have the right to insure all or part of the Underlying Insurance(s) and/or the Self Insured Retention.

4.  **JOINT VENTURES**

As regards any liability of the "Insured" which is covered under this Policy and arises in any manner whatsoever out of the operations or existence of any joint venture, joint lease, joint operating agreement or partnership (hereinafter called the "Joint Venture") in which the "Insured" has an interest:

(a)  the Underlying Insurance(s), or

(b)  the Self Insured Retention, and

(c)  the Limits of Liability of Underwriters under this Policy,

EX. A, PG. 43 

EX. A, PG. 44

shall be limited to the product of:

(i)  the percentage interest of the "Insured" in said "Joint Venture" or such percentage as takes account of any acceptance by Underwriters as set out in Definition 14(d), and

(ii)  the Underlying Insurance(s), the Self Insured Retention and the Limits of Liability specified by this Policy, respectively.

Where the percentage interest of the "Insured" in said "Joint Venture" is not set forth in writing, the percentage to be applied shall be that which would be imposed by law at the inception of the "Joint Venture". Such percentage shall not be increased by the insolvency, bankruptcy, or receivership of any members of the said "Joint Venture" or any other parties. Nothing contained in this Joint Venture clause shall make this Policy subject to the terms of any other insurance.

EX. A, PG. 44

## II.   CONDITIONS

This Policy is subject to the following conditions:

### 1.   APPEALS

In the event the "Insured" elects not to appeal a judgement which may, in whole or in part, involve indemnity under this Policy, Underwriters may, following discussion with the "Insured", elect to make such appeal at their own cost and expense and shall be liable for the taxable costs and disbursements and any additional interest incidental to such appeal; but in no event shall the liability of Underwriters exceed the relevant Limits of Liability set out in Item 4 of the Declarations plus such costs, expenses, disbursements and interest.

### 2.   ASSIGNMENT

Assignment of interest under this Policy shall not bind Underwriters unless and until their written agreement thereto is secured.

### 3.   CANCELLATION

Cancellation of this Policy may be effected either

(a) by the "Insured", or

(b) by Underwriters or their representatives.

The "Insured" may cancel this Policy by mailing or delivering advance written notice to Underwriters or their representatives stating when the cancellation is to take effect.

If Underwriters cancel the Policy because of non-payment of premium, they or their representatives must mail or deliver to the "Insured" not less than fifteen (15) days advance written notice stating when the cancellation is to take effect. If Underwriters cancel for any other reason, they or their representatives must mail or deliver to the "Insured" not less than ninety (90) days advance written notice stating when the cancellation is to take effect. Mailing of notice by Underwriters or their representatives to the "Insured" at the mailing address shown in Item 1 of the Declarations will be sufficient to prove notice.

The Policy Period will end on the day and hour stated in the cancellation notice.

If Underwriters cancel the Policy, final premium will be calculated pro rata based on the time that this Policy was in force.

If the "Insured" cancels the Policy, final premium will be more than pro rata; it will be based on the time this Policy was in force and increased by Underwriters' short rate cancellation table and procedure.

Premium adjustment may be made at the time of cancellation or as soon as practicable thereafter but the cancellation will be effective even if no refund has been made or offered to the "Insured". Underwriters' cheque, or their representative's cheque, mailed or delivered, shall be sufficient tender of any refund due to the "Insured".

The first named "Insured" in Item 1 of the Declarations shall act on behalf of all other "Insureds" with respect to the giving and receiving of notice of cancellation and the receipt of any refund that may become payable under the Policy.



Any of these provisions that conflicts with a law that controls the cancellation of the insurance to which this Policy applies is changed by this statement to comply with the law.

**4.  CHOICE OF LAW/JURISDICTION**

As per Item 12 of the Declarations.

**5.  CROSS LIABILITY**

In the event of an "Occurrence" resulting in "Bodily Injury" to an employee of one "Insured" hereunder for which another "Insured" is, or may be, liable then this Policy shall cover such "Insured" against whom a "Claim" for damages has been made or may be made in the same manner as if separate policies had been issued to each "Insured" hereunder.

In the event of an "Occurrence" resulting in "Property Damage" to property of one "Insured" hereunder for which another "Insured" is, or may be, liable then this Policy shall cover such "Insured" against whom a "Claim" for damages has been made or may be made in the same manner as if separate policies had been issued to each "Insured" hereunder.

Nothing contained herein shall operate to increase Underwriters' Limit of Liability set out in Item 4 of the Declarations.

**6.  CURRENCY AND PAYMENTS OF PREMIUMS**

Premiums and indemnity payments due under this Policy are payable in the currencies set out in Item 6 of the Declarations.  Payment of premiums shall be made by the first named "Insured" set out in Item 1 of the Declarations to the person or entity set out in Item 8 of the Declarations.  If the first named "Insured" or its agent fails to pay the premium due to Underwriters by the due date, Underwriters may issue notice to the named "Insured" set out in Item 1 of the Declarations in accordance with the provisions of Condition 3.

**7.  DEFENCE**

Underwriters shall not be called upon to assume the handling or control of the defence or settlement of any "Occurrence" that may be covered under this Policy but Underwriters shall have the right, but not the duty, to participate with the "Insured" in the defence or settlement of any "Occurrence" which may be indemnifiable in whole or in part by this Policy.

**8.  INSOLVENCY**

The insolvency, bankruptcy, receivership or any refusal or inability to pay of the "Insured" and/or any other Underwriter shall not operate to:

(a)  deplete the Underlying Insurance(s) set out in Item 2 of the Declarations;

(b)  deplete the Self Insured Retention set out in Item 3 of the Declarations;

(c)  increase Underwriters' liability under this Policy;

(d)  increase any Underwriters' share of liability under this Policy;

(e)  relieve Underwriters from the payment of "Ultimate Net Loss" under this Policy.



EX. A, PG. 46

## 9. INSPECTION AND INVESTIGATION

Underwriters may, at any time, audit and examine the books and records of the "Insured" as they relate to this Policy at any time during the Policy Period and for up to three years after the expiration or termination of this Policy.

Underwriters have the right, but are not obligated, to inspect the premises and operations of the "Insured" at any time. The inspections are not safety inspections. They relate only to the insurability of the premises and operations and the premiums to be charged. Underwriters may give the "Insured" reports on the conditions found. They may also recommend changes. Whilst they may help reduce losses, Underwriters do not undertake to perform the duty of any person or organisation to provide for the health or safety of the "Insured's" employees or the public. Underwriters do not warrant that the premises or operations of the "Insured" are safe or healthful or that they comply with laws, regulations, codes or standards.

## 10. LOSS PAYABLE

Any amount for which Underwriters are liable under this Policy shall be due and payable solely to the agent of the "Insured" set out in Item 9 of the Declarations within thirty (30) days after it is agreed by Underwriters.

## 11. MAINTENANCE OF UNDERLYING INSURANCE(S)

During the Policy Period, the "Insured" agrees:

(a) to keep the policies listed in Item 2 of the Declarations in full force and effect;

(b) that any renewals or replacements of the policies listed in Item 2 of the Declarations will not be more restrictive in coverage;

(c) that the limits of insurance of the policies listed in Item 2 of the Declarations shall not change except for any reduction or exhaustion of aggregate limits by payment of "Claims" for "Occurrences" covered by this Policy; and,

(d) that the terms and endorsements of the policies listed in Item 2 of the Declarations will not materially change during the Policy Period.

If the "Insured" fails to comply with any of these requirements, Underwriters will only be liable to the same extent that they would have been, had the "Insured" fully complied with these requirements.

## 12. NOTICE OF OCCURRENCE

Written notice must be given to Underwriters within ninety (90) days through the persons named in Item 11 in the Declarations by or on behalf of the "Insured" whenever the "Insured" has information:

(a) of any "Occurrence" causing the death of a person or,

(b) of any "Occurrence" where any injury of the following type occurs:

    (i)     quadriplegia or paraplegia; or,

    (ii)    major amputations (leg, arm, foot or hand); or,



    (iii)      other serious injuries such as head injuries, serious burns, loss of an eye, permanent loss of any of the senses, severe scarring, alleged paralysis;

(c) of any "Occurrence" which the "Insured" should reasonably conclude may deplete the Underlying Insurance(s) or Self Insured Retention by 50% or more; or,

(d) of any claim(s) in which Underwriters are named.

## 13. OIL POLLUTION ACT DISCLAIMER

This Policy of insurance is not evidence of financial responsibility under the Oil Pollution Act 1990 or any similar national, federal, state or local laws. Any showing or offering of this Policy by the "Insured" as evidence of insurance shall not indicate that the Underwriters have consented to act as guarantor or to be sued directly in any jurisdiction whatsoever for the purposes of the Oil Pollution Act 1990. Underwriters do not consent to be guarantors or to be sued directly.

## 14. OTHER INSURANCE

If other insurance applies to a "Claim" also covered by this Policy, this Policy will apply excess of the other insurance regardless of whether the other insurance is valid or collectable. However, this provision will not apply if the other insurance is specifically written to be excess of this Policy.

## 15. PREVENTION OF FURTHER OCCURRENCES

As soon as the "Insured" becomes aware of an "Occurrence", the "Insured" shall promptly, and at its own expense, take all reasonable steps to prevent further "Bodily Injury", "Personal Injury", "Property Damage" and/or "Advertising Injury" resulting from the same "Occurrence" (or conditions which may give rise to a similar "Occurrence").

## 16. PRIOR INSURANCE

If an "Occurrence" covered by this Policy is also covered in whole or in part under any other excess policy issued to the "Insured" prior to the effective date of this Policy, Underwriters' Limits of Liability as stated in Item 4 of the Declarations will be reduced by any amounts due to the "Insured" under such prior insurance.

## 17. SEPARATION OF "INSUREDS"

Except with respect to Underwriters' Limits of Liability and any rights or duties specifically assigned to the first named "Insured" designated in Item 1 of the Declarations, this insurance applies:

(a) as if each named "Insured" were the only named "Insured"; and,

(b) separately to each "Insured" against whom "Claim" is made or suit brought.

## 18. SERVICE OF SUIT

If and as attached to this Policy per Declarations.

## 19. SUBROGATION

Where an amount is paid by Underwriters under this Policy, the "Insured's" rights of recovery against any other person or entity in respect of such amount shall be exclusively subrogated to Underwriters. At Underwriters' request the "Insured" will assist, co-operate

and lend its name to the exercise of Underwriters' rights of subrogation. The "Insured" shall do nothing to prejudice such rights.

All recoveries shall be applied as follows:

(a) any interests, including the "Insured" that have paid an amount in excess of Underwriters' payment under this Policy will be reimbursed first;

(b) Underwriters then will be reimbursed up to the amount they have paid; and,

(c) lastly, any interests, including the "Insured" over which Underwriters' insurance is excess, are entitled to claim the residue.

Expenses incurred in the exercise of rights of recovery shall be apportioned between the interests, including the "Insured", in the ratio of their respective recoveries as finally settled.

## 20. TRANSFER OF RIGHTS AND DUTIES

The rights and duties of the "Insured" under this Policy may not be transferred without prior written consent of Underwriters.

If the "Insured" dies or is legally declared bankrupt, rights and duties will be transferred to its legal representative but only while acting within the scope of duties as its legal representative. However, notice of cancellation sent to the first named "Insured" designated in Item 1 of the Declarations and mailed to the address shown in Item 1 of the Declarations of this Policy will be sufficient notice to effect cancellation of this Policy.

## 21. WAIVER OR CHANGE

Notice to any agent or knowledge possessed by any agent or any other person shall not effect a waiver of or change in any part of this Policy. This Policy can only be changed by a written endorsement that becomes a part of this Policy and is signed by or on behalf of Underwriters.



III. **EXCLUSIONS**

This Policy shall not indemnify for any actual or alleged liability:

1. arising out of breach of contract;

2. (a) arising out of "Occupational Disease";

    (b) arising under any workers' compensation, unemployment compensation or disability laws, statutes, or regulations;

    (c) for "Employers Liability" where the "Occurrence" takes place, and jurisdiction is ruled to be, in any state(s) where the "Insured" is a non-participant in or non-subscriber to regular programmes established by that state's workers' compensation, unemployment compensation or disability laws, statutes, or regulations; however this exclusion shall not apply to liability of a "Third Party" assumed by the "Insured" under an "Insured Contract"; or

    (d) to any "Leased Employee" however this exclusion shall not apply to "Employers Liability" if the person is enrolled under the "Insured's" Workers' Compensation Program;

3. arising out of "Aviation Products";

4. for "Discrimination", "Sexual Harassment" and/or "Inappropriate Employment Conduct";

5. for "Property Damage" to property:

    (a) owned, leased, rented or occupied by the "Insured";

    (b) in the care, custody or control of the "Insured";

6. for "Property Damage" to the "Insured's Products" arising out of it or any part of it;

7. for "Property Damage" to property worked on by or on behalf of the "Insured" arising out of such work or any portion thereof, or out of any material, parts or equipment furnished in connection therewith;

8. for the withdrawal, recall, return, inspection, repair, replacement, or loss of use of the "Insured's Products" or work completed by or for the "Insured" or for any property of which such "Insured's Products" or work form a part;

9. for any fines or penalties;

10. for "Personal Injury" or "Advertising Injury" arising out of:

    (a) failure to perform under any contract;

    (b) infringement of trademark, patent, service mark or trade name, other than copyright, titles or slogans;

    (c) incorrect description or mistake in advertised price of goods, products or services sold, offered for sale or advertised;

    (d) unfair competition;



11. for any act, negligence, error or omission, malpractice or mistake arising out of "Professional Services", committed or alleged to have been committed by or on behalf of the "Insured" in the conduct of any of the "Insured's" business activities;

12. directly or indirectly caused by or arising out of:- asbestos; tobacco; coal dust; mold; chromium copper arsenate; Exterior Insulation and Finish System (EIFS); polychlorinated biphenyls; silica; benzene; lead; Methyl Tertiary Butyl Ether/Ethyl; talc; dioxin; pesticides or herbicides; electromagnetic fields; pharmaceutical or medical drugs/products/substances/devices; or any substance containing such material or any derivative thereof;

13. in the nature of:- hearing loss or damage; human immuno deficiency virus or acquired immune deficiency syndrome; cumulative trauma disorder; repetitive motion or strain injury; carpal tunnel syndrome;

14. for the failure to supply or from fluctuations in supply of any oil, gas, electricity, chemicals, products, materials or services;

15. directly or indirectly caused by or arising out of seepage, pollution or contamination however caused whenever or wherever happening;

This exclusion shall not apply where all of the following conditions are shown by the "Insured" to have been met:

(a) the seepage, pollution or contamination was caused by an "Occurrence"; and,

(b) the "Occurrence" first commenced on an identified specific date during the period set out in Item 5 of the Declarations; and,

(c) the "Occurrence" was first discovered by the "Insured" within fourteen (14) days of such first commencement; and,

(d) written notification of the "Occurrence" was first received from the "Insured" by Underwriters within ninety (90) days of the "Insured's" first discovery of the "Occurrence" ; and,

(e) the "Occurrence" did not result from the "Insured's" intentional violation of any statute, rule, ordinance or regulation.

Even if the above conditions (a) to (e) are satisfied, this Policy shall not indemnify for any actual or alleged liability:

(i) to abate or investigate any threat of seepage onto or pollution or contamination of the property of a "Third Party";

(ii) for seepage, pollution or contamination of property which is or was, at any time, owned, leased, rented or occupied by any "Insured", or which is or was, at any time, in the care, custody or control of any "Insured" (including the soil, minerals, water or any other substance on, in or under such owned, leased, rented, occupied or controlled property or property in such care, custody or control);

(iii) in respect of any seepage, pollution or contamination which is directly caused by or arises out of the drilling of, production from, servicing of, operation of or participation in wells or holes;



16. arising out of the handling, processing, treatment, storage, disposal or dumping of any waste materials or substances, or arising out of such waste materials or substances during transportation;

17. arising directly or indirectly out of any one or more of the following:

    (a) war, invasion, acts of foreign enemies, hostilities (whether war be declared or not), civil war, revolution, rebellion, military or usurped power, insurrection or civil strife arising therefrom, or any hostile act by or against a belligerent power;

    (b) confiscation or expropriation or nationalisation or requisition or deliberate destruction of, or deliberate damage to property;

    (c) capture, seizure, arrest, restraint or detainment and the consequences thereof or any attempt threat;

    (d) any act of terrorism or of any person(s) acting maliciously or from a political motive;

18. arising out of any obligation of the "Insured" under a no-fault, uninsured motorist or underinsured motorist law;

19. (a) arising out of an "Insured's" capacity, duty or responsibility as an officer, director or trustee of a corporation by reason of any breach of fiduciary duty or improper conduct or conflict of interest in the performance of an "Insured's" duties, responsibilities or accountability as an officer, director or trustee, including, without limitation, any actual or alleged misstatement, misleading statement, gain of personal profit or advantage to which the "Insured" was or is not entitled legally, any dishonest act, or bad faith conduct, in the "Insured's" capacity as officer, director or trustee, or with respect to the capital, assets or securities of the corporation, or any action taken beyond the scope of the "Insured's" authority as an officer, director or trustee;

    (b) arising out of any violation of any national, federal, state or local law regulating, controlling and governing stock, bonds or securities of any type or nature, including, without limitation, liability under The Securities Act of 1933, The Securities Exchange Act of 1934, The Trust Indenture Act of 1939, The Public Utility Holding Company Act of 1935, The Investment Company Act 1940, The Investment Advisers Act of 1940, and the so called "Blue Sky" Laws of the various states or other jurisdiction;

    (c) of any officer, director or trustee arising out of a shareholder's derivative action;

    (d) which would be payable under the terms of a directors and officers liability insurance policy or a directors and company reimbursement indemnity policy of the type issued by insurance companies of the United States of America, as if any "Insured" had obtained such coverage in an amount sufficient to pay the full amount being claimed against any "Insured" and any defence thereof, whether or not any "Insured" has obtained such coverage;

20. (a) arising out of any violation of any national, federal, state or local law regulating, controlling or governing antitrust or the prohibition of monopolies, activities in restraint of trade, unfair methods of competition or deceptive acts and practices or conspiracies in trade and commerce including, without limitation, the Sherman Act, the Clayton Act, the Robinson-Patman Act, the Federal Trade Commission Act, and the Hart-Scott-Rodino Antitrust Improvements Act and the Racketeer Influenced And Corrupt Organizations Act;

    (b) for any "Claims" for damages made by or on behalf of the Federal Deposit Insurance Corporation, the Federal Savings and Loan Insurance Corporation, the Resolution Trust Company, and other depository insurance corporation, the Comptroller of the

EX. A, PG. 53

Currency, the Federal Home Loan Bank board or any other national, federal, state or local bank regulatory agency, in its capacity as regulator, receiver, conservator, liquidator shareholder, successor in interest or assignee of the "Insured", whether such liability for damages is brought in the name of such agency or by or on behalf of such agency in the name of any other person;

(c) arising out of or contributed to by the dishonesty, infidelity or fraud of any "Insured."

21. for any "Claim" not covered by the underlying insurance(s) listed in Item 2 of the Declarations other than such insurance(s) that are self insured to the extent referred to in Insuring Agreement 3. This exclusion will not apply to the extent that such "Claim" would have been covered except for the reduction or exhaustion of an aggregate limit shown in Item 2 of the Declarations by payment of "Claim(s)" for "Occurrence(s)" which are also covered by this Policy.

Nothing contained in the above Exclusions shall extend this Policy to cover any liability which would not have been covered had these Exclusions not been incorporated herein.

EX. A, PG. 53

## IV.  DEFINITIONS

### 1.  ADDITIONAL INSURED

The words "Additional Insured", wherever used in this Policy, shall mean any person or entity to whom the "Insured" is obliged by an "Insured Contract" entered into before any relevant "Occurrence" and/or "Claim" to provide insurance such as is afforded by this Policy with respect to "Bodily Injury" or "Property Damage" arising out of operations conducted by the "Insured" but only to the extent required by any indemnity given by the "Insured" in said "Insured Contract" to the "Additional Insured".

### 2.  ADVERTISING INJURY

The words "Advertising Injury", wherever used in this Policy, shall mean injury to a "Third Party" arising out of the "Insured's" advertising activities, but only if such injury arises out of:

(a) oral or written publication of material that slanders or libels a person or organisation or disparages a person's or organisation's goods, products or services;

(b) oral or written publication of material that violates a person's right to privacy;

(c) misappropriation of advertising ideas or style of doing business; or,

(d) infringement of copyright, title or slogan.

### 3.  AIRCRAFT LIABILITY

The words "Aircraft Liability", wherever used in this Policy, shall mean liability arising out of the maintenance, operation or use of an aircraft, aeroplane or helicopter which is designed to fly in the air or atmosphere.

### 4.  AUTOMOBILE

The words "Automobile," wherever used in this Policy, shall mean a land motor vehicle, trailer or semi-trailer designed for travel on public roads, including any attached machinery or equipment, but the word "Automobile" shall not include the contents of such vehicle, trailer or semi-trailer.

### 5.  AUTOMOBILE LIABILITY

The words "Automobile Liability," wherever used in this Policy, shall mean liability arising out of the maintenance, operation or use of any "Automobile".

### 6.  AVIATION PRODUCTS

The words "Aviation Products", wherever used in this Policy, shall mean any of the "Insured's Products" consisting of or being part of an aircraft, aeroplane, helicopter, rocket, missile, satellite or other craft designed to fly in the air, atmosphere or space.

### 7.  BODILY INJURY

The words "Bodily Injury", wherever used in this Policy, shall mean bodily injury, sickness, disability, or disease. "Bodily Injury" shall also mean mental injury, mental anguish,



EX. A, PG. 54

EX. A, PG. 55

humiliation, shock or death if directly resulting from bodily injury, sickness, disability or disease.

**8.  CLAIM**

The word "Claim", wherever used in this Policy, shall mean that part of each written demand received by the "Insured" for damages, including the service of suit or institution of arbitration proceedings.

**9.  COMPLETED OPERATIONS LIABILITY**

The words "Completed Operations Liability", wherever used in this Policy, shall mean liability for "Bodily Injury" and/or "Property Damage" arising out of the "Insured's" operations or reliance upon a representation or warranty made at any time with respect thereto, but only if the "Bodily Injury" and/or "Property Damage" happens after such Operations have been completed or abandoned and happens away from the premises owned, rented, leased, or occupied by the "Insured".

Operations include materials, parts or equipment furnished in connection therewith. Operations shall be deemed completed at the earliest of the following times:

(a)  when all operations to be performed by or on behalf of the "Insured" under the contract have been completed; or,

(b)  when all operations to be performed by or on behalf of the "Insured" at the site of the operations have been completed; or,

(c)  when that portion of the work out of which the "Bodily Injury" and/or "Property Damage" arises has been put to its intended use by any person or entity other than another contractor or sub-contractor engaged in performing operations for a principal as part of the same project.

Operations which may need service, maintenance, correction, repair or replacement, but which are otherwise complete, shall be deemed as completed.

"Completed Operations Liability" does not include liability for "Bodily Injury" and/or "Property Damage" arising out of:

(a)  operations in connection with the transportation of property, unless the "Bodily Injury" and/or "Property Damage" arises out of a condition in or on an "Automobile" created by the loading or unloading thereof, or,

(b)  the existence of tools, uninstalled equipment or abandoned or unused materials.

**10.  DEFENCE EXPENSES**

The words "Defence Expenses", wherever used in this Policy, shall mean investigation, adjustment, appraisal, defence and appeal costs and expenses and pre and post judgement interest, paid or incurred by or on behalf of the "Insured".

The salaries, expenses or administrative costs of the "Insured" or its employees or any insurer or an "Additional Insured" shall not be included within the meaning of "Defence Expenses".

EX. A, PG. 55

**11. DISCRIMINATION**

The word "Discrimination", wherever used in this Policy, shall mean termination of the employment relationship, a demotion, a failure or refusal to hire or promote, denial of an employment benefit or the taking of any adverse or differential employment action because of race, colour, religion, age, sex, disability, pregnancy, sexual orientation, national origin, or any other basis prohibited by any national, federal, state or local law.

**12. EMPLOYERS' LIABILITY**

The words "Employer's Liability", wherever used in this Policy, shall mean any liability of an "Insured" to its employee arising out of the employment of that employee.

**13. INAPPROPRIATE EMPLOYMENT CONDUCT**

The words, "Inappropriate Employment Conduct", wherever used in this Policy, shall mean:

(a)  actual or constructive termination of an employment relationship in a manner which is alleged to have been against the law or wrongful or in breach of an implied employment contract or breach of the covenant of good faith or fair dealing in the employment contract;

(b)  allegations of wrongful demotion, or wrongful discipline;

(c)  allegations of misrepresentation or defamation made by an employee, a former employee or an applicant for employment which arise from an employment decision to hire, fire, promote or demote;

(d)  allegations of infliction of emotional distress, mental injury, mental anguish, shock, sickness, disease or disability made by an employee, a former employee or an applicant for employment which arise from an employment decision to hire, fire, promote or demote;

(e)  allegations of false imprisonment, detention or malicious prosecution made by an employee, a former employee or an applicant for employment which arise from an employment decision to hire, fire, promote or demote;

(f)  allegations of libel, slander, defamation of character or any invasion of right of privacy made by an employee, a former employee or an applicant for employment which arise from an employment decision to hire, fire, promote or demote; or,

(g)  other injury allegations made by an employee, a former employee or an applicant for employment which arise from an employment decision to hire, fire, promote or demote.

"Inappropriate Employment Conduct" does not include damages determined to be owing under a written or express contract of employment or obligation to make payments, including but not limited to severance payments, in the event of the termination of employment.

Inappropriate Employment Conduct shall not include any allegations other than those set forth above.



EX. A, PG. 56

**14. INSURED**

The word "Insured", wherever used in this Policy, shall mean only the following:

(a)  the named "Insured" set out in Item 1 of the Declarations;

(b)  the named "Insured's" subsidiary, owned or controlled companies at the Inception Date of this Policy;

(c)  any officer, director, stockholder, partner or employee of the "Insured", but only in respect of an "Occurrence" covered hereunder whilst acting within their duties;

(d)  such additional percentage of any joint venture, joint lease, joint operating agreement or partnership where the "Insured" is required by written contract to provide insurance for any other partner in the joint venture joint lease, joint operating agreement or partnership and which has been declared to and accepted by Underwriters subscribing to this Policy;

(e)  any person or entity that would otherwise fall into (b), or (d) above but for which the first named "Insured" first seeks coverage after the inception date and during the Policy Period, will automatically be covered hereon provided satisfactory advice and full information is received by Underwriters from the first named "Insured" of such additional person or entity within forty-five (45) days after the date such coverage is required.  Underwriters reserve the right to charge additional premium and/or impose specific terms upon any person or entity covered under this paragraph (e).

**15. INSURED CONTRACT**

The words "Insured Contract", wherever used in this Policy, shall mean any written contract entered into by the "Insured" where the "Insured" assumes the tort liability of another party to pay for "Bodily Injury" or "Property Damage" to which this Policy applies to a "Third Party". Tort liability means a liability that would be imposed by law in the absence of any written contract.  Written contract includes any written indemnity agreement entered into by the "Insured" with a "Third Party".

**16. INSURED'S PRODUCTS**

The words "Insured's Products", wherever used in this Policy, shall mean goods or products manufactured, sold, handled or distributed by the "Insured" or by others trading under the name of the "Insured", including any packaging thereof.

**17. LEASED EMPLOYEE**

The words "Leased Employee", wherever used in this Policy, shall mean a person leased to the "Insured" by a leasing firm under a written contract between the "Insured" and the leasing firm to perform duties related to the conduct of the "Insured's" business.

**18. OCCUPATIONAL DISEASE**

The words "Occupational Disease", wherever used in this Policy, shall mean any injury, including death, sickness, disease or disability, defined as occupational disease in any workers compensation or disability benefits laws, statutes or regulations of any jurisdiction in which the "Occurrence" falls or the Occupational Disease arises.

**19. OCCURRENCE**

The word "Occurrence", wherever used in this Policy, shall mean an accident, including continuous and repeated exposure to substantially the same general harmful conditions

which results in liability to which this Policy applies, none of which was expected or intended.

## 20. PERSONAL INJURY

The words "Personal Injury", wherever used in this Policy, shall mean injury to a person other than "Bodily Injury" or "Advertising Injury" arising from:

(a) false arrest, false imprisonment, wrongful eviction, wrongful detention of a "Third Party" person;

(b) libel, slander, defamation of character or invasion of right of privacy of such person, unless arising out of advertising activities;

(c) mental injury, mental anguish or shock to such person which results from (a) or (b) above.

## 21. PRODUCTS LIABILITY

The words "Products Liability", wherever used in this Policy, shall mean liability for "Bodily Injury" and/or "Property Damage" arising out of the "Insured's Products" or reliance upon a representation or warranty made at any time with respect thereto, but only if the "Bodily Injury" and/or "Property Damage" happens after physical possession of the "Insured's Products" has been relinquished to others and happens away from premises owned, leased, rented or occupied by the "Insured".

## 22. PROFESSIONAL SERVICES

The words "Professional Services" wherever used in this Policy, shall mean the preparation or approval of audits, accounts, maps, plans, opinions, reports, surveys, designs or specifications and supervisory, inspection, engineering or data processing services.

## 23. PROPERTY DAMAGE

The words "Property Damage", wherever used in this Policy, shall mean physical loss of, physical damage to or physical destruction of tangible property of a "Third Party", including loss of use of the tangible property so lost, damaged or destroyed.

## 24. SEXUAL HARASSMENT

The words "Sexual Harassment", wherever used in this Policy, shall mean unwelcome sexual advances, requests for sexual favours or other verbal or physical conduct of a sexual nature that: (1) explicitly or implicitly are made a condition of employment, (2) are used as basis for employment decisions, or (3) create a work environment that interferes with performance.

## 25. THIRD PARTY

The words "Third Party", wherever used in this Policy, shall mean any company, entity, or person other than an "Insured" or other than a subsidiary, owned or controlled company or entity of an "Insured". Notwithstanding Definition 14(c) of this Policy, an employee of an "Insured" shall be treated as a "Third Party".



**26. ULTIMATE NET LOSS**

The words "Ultimate Net Loss", wherever used in this Policy, shall mean the amount the "Insured" is obligated to pay, by judgement or settlement, as damages resulting from an "Occurrence" to which this Policy applies, including the service of suit, institution of arbitration proceedings and all "Defence Expenses" in respect of such "Occurrence".

**27. WATERCRAFT LIABILITY**

The words "Watercraft Liability", wherever used in this Policy, shall mean liability arising out of the maintenance, operation or use of any craft designed to float or travel on, in or under the water, including hovercraft.

EX. A, PG. 59