IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| BPX PRODUCTION COMPANY, F/K/A PETROHAWK ENERGY CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>CERTAIN UNDERWRITERS AT LLOYD'S, LONDON SUBSCRIBING TO CGL POLICY NO. ENGLO1800982 and CERTAIN UNDERWRITERS AT LLOYD'S, LONDON SUBSCRIBING TO UMBRELLA POLICY NO. ENGLO1800981,<br><br>Defendants. | CIVIL ACTION NO.: 22-cv-001058 |

**IMPROPERLY NAMED DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE TO OPPOSED MOTION TO DISMISS UNDER 12(b)(6) FOR FAILURE TO STATE A CLAIM**

**HOLMAN FENWICK WILLAN USA LLP**

 /s/ Amanda J. Kujda
**Amanda J. Kujda**
Texas No. 24053565 / Federal No. 685206
amanda.kujda@hfw.com
5151 San Felipe, Suite 400
Houston, Texas 77056
Telephone: 713-971-0888
Facsimile: 713-953-9470
*Attorney-in-Charge for Defendants*

**OF COUNSEL:**
**HOLMAN FENWICK WILLAN USA LLP**
**Michael E. Carrer**
Texas No. 24073391 / Federal No. 1385117
michael.carrer@hfw.com

# **TABLE OF CONTENTS**

Table of Contents...................................................................................................................i

Table of Authorities..............................................................................................................ii

Short Statement of Nature and Stage of Proceeding / Statement of the Issues..............1

Summary of the Argument .................................................................................................1

Argument ..............................................................................................................................2

    I.    No Duty to Defend Under Umbrella Policy ........................................................2

    II.   No Fact Issue Regarding Terms of the Umbrella Policy..................................2

    III.  There Is No "Suit" Such That the Duty to Defend Was Never Triggered .......3

        A.    Pre-Suit Settlement Discussion Is Not an "Alternative Dispute Resolution Proceeding".................................................................3

        B.    Underwriters' Non-Consent Is Dispositive...............................................4

        C.    Underwriters' Denial of Coverage Is Not an Admission of a "Suit"........7

    IV.  Underwriters Will Never Have a Duty to Indemnify .......................................8

    V.   No Valid "Bad Faith" Claim Here ...................................................................12

    VI.  BPX Does Not Have a Separate Texas Insurance Code Claim......................13

    VII. The Declaratory Relief Overwhelmingly Thwarts Judicial Economy ...........14

Conclusion ..........................................................................................................................15

Certificate of Service .........................................................................................................16

## **TABLE OF AUTHORITIES**

**Cases**                                                                                                                  **Page(s)**

*Altman Contractors, Inc. v. Crum & Forster Specialty Ins. Co.*,..............................3, 5
   232 So. 3d 273 (Fla. 2017)

*Cincinnati Ins. Co. v. AMSCO Windows,*................................................................4
   593 Fed. Appx. 802 (10th Cir. 2014) (not designated for publication)

*Eagle Supply Mfg. LP v. Landmark Am. Ins. Co.*,......................................................11
   630 S.W.3d 342 (Tex. App.-Eastland 2021, pet. denied)

*Gulf Ins. Co. v. Parker Prods., Inc.*,..........................................................................6
   498 S.W.2d 676 (1973)

*Great Am. Ins. Co. v. Hamel*, ............................................................................. 9-10
   525 S.W.3d 655 (Tex. 2017)

*In re Farmers Texas County Mut. Ins.*, ....................................................................12
   621 S.W.3d 261 (Tex. 2021)

*Meyers Warehouse, Inc. v. Canal Indem. Co.*,.......................................................3, 7
   614 Fed. Appx. 719 (5th Cir. 2015) (not designated for publication)

*Nautilus Ins. Co. v. Concierge Care Nursing Ctrs., Inc.*,..........................................6, 7
   804 F. Supp. 2d 557 (S.D. Tex. 2011)

*Northfield Ins. Co. v. Loving Home Care, Inc.*,............................................................7
   363 F.3d 523 (5th Cir. 2004)

*Phillips v. Bramlett*,................................................................................................12
   288 S.W.3d 876 (Tex. 2009)

*Pogo Res., LLC v. St. Paul Fire & Marine Ins. Co.*,....................................................13
   No.3:19-cv-2682-BH, 2022 WL 209276 (N.D. Tex. Jan 24, 2022)

*Pogo Res., LLC v. St. Paul Fire & Marine Ins. Co.*,............................................. 13-14
   No.3:19-cv-2682-BH, 2022 WL 1102861 (N.D. Tex. Apr. 13, 2022)

## SHORT STATEMENT OF NATURE AND STAGE OF PROCEEDING / STATEMENT OF THE ISSUES /

1. The Court Procedures require inclusion of these two categories in any brief. Underwriters included these two sections in their moving brief and, to avoid duplication, refer to same in connection with this brief. (*See* Dkt. 19 at 5-6).[1]

## SUMMARY OF THE ARGUMENT

2. A pre-suit settlement discussion is not an "alternative dispute resolution proceeding" and, even if it were, the lack of consent from Underwriters means no "suit" was filed. Without a "suit", there is no duty to defend under the CGL Policy. BPX admits there is no duty to defend under the Umbrella Policy. Therefore, BPX's breach of contract-duty to defend cause of action must be dismissed with prejudice.

3. BPX's cause of action for breach of contract-duty to indemnify similarly fails because BJS will never be obligated to pay any money. BPX's reliance on *Hamel* is misplaced since the facts here do not support a "compelling reason" to require a separate lawsuit. Therefore, BPX's breach of contract-duty to indemnify cause of action must be dismissed with prejudice.

4. This claim does not involve *Stowers*. Thus, Texas law expressly rejecting a bad faith cause of action applies. Further, BPX is not an "insured" and, thus, is not entitled to bring a claim for violation of the Texas Insurance Code. Therefore, BPX's cause of action for bad faith and violation of Chapter 541 of the Texas Insurance Code must be dismissed with prejudice.

---

[1] Citations to Brief pages throughout this Reply refer to the page number stamped in the top margin via the CM/ECF system and not the page numbers found in the footers of the brief.

5.      BPX's cause of action for declaratory judgment is wholly duplicative of the relief sought in the other causes of action. Requiring the parties to litigate the declaratory judgment cause of action would result in the waste of both judicial and the parties' resources. It must be dismissed with prejudice.

## ARGUMENT[2]

### I.     No Duty to Defend Under Umbrella Policy

6.      BPX admits that there is no duty to defend under the Umbrella Policy.[3] (*See* Dkt. 21 at 12, n.1). BPX's cause of action for breach of the (non-existent) duty to defend under the Umbrella Policy must be dismissed with prejudice.

### II.    No Fact Issue Regarding Terms of the Umbrella Policy

7.      BPX's claim that "there may be a fact issue regarding the terms of the insurance policy" (*see* Dkt. 21 at 12, n.2) is wrong. The Umbrella Policy supplied by Underwriters (*see* Dkt. 19-2) and BPX (*see* Dkt. 21-1) are substantively identical, with the only difference being on the Declarations page (upon which neither Underwriters nor BPX rely in their arguments). Even if there were substantive differences, under the Motion to Dismiss standard, the Court must accept as true the contents of the Umbrella Policy provided by BPX. Every policy provision to which Underwriters referred in their Motion are found in the BPX copy with *identical* wording as found in the copy attached

---

[2] Document 19-4 purports to be an "Affidavit of John D. Sullivan" according to the CM/ECF notice. However, Document 19-4 is a copy of BPX's Proposed Order. While there was no affidavit filed by BPX supporting the accuracy of the exhibits attached to its Response brief, since this is a Motion to Dismiss, and since BPX could have simply attached such documents to its First Amended Petition without the need of an affidavit, Underwriters do not oppose the Court's consideration of Documents 19-1 through -3.

[3] Capitalized terms used throughout this Reply are defined in Underwriters' Moving Brief, Dkt. 19.

to Underwriters' Motion. Thus, there is no "fact issue".

### III. There Is No "Suit" Such That the Duty to Defend Was Never Triggered

#### A. Pre-Suit Settlement Discussion Is Not an "Alternative Dispute Resolution Proceeding"

8. BPX contends that a contractual agreement between two parties (neither of which being Underwriters) transforms pre-suit settlement discussions into an "alternative dispute resolution proceeding". BPX's argument asks this Court to ignore clear and directly on point *Fifth Circuit* law and, instead, rely on a *Florida* state court decision involving a *Florida* statute and applying *Florida* law. *See Altman Contractors, Inc. v. Crum & Forster Specialty Ins. Co.*, 232 So. 3d 273 (Fla. 2017).

9. In *Altman*, the Florida court held that a *statutorily required* pre-suit process specific to Florida constitutes an "alternative dispute resolution proceeding." *Id.* at 276-79. This case does not involve a Florida (or any) statute requiring a pre-suit process and Florida law does not control. This case involves two parties – BPX and BJS – who voluntarily agreed to participate in pre-suit settlement discussions. The *Altman* decision does not address voluntary pre-suit settlement discussions. However, the Fifth Circuit decision in *Meyers Waterhouse, Inc. v. Canal Indemnity Company*, 614 Fed. Appx. 719 (5th Cir. 2015) (not designated for publication), addresses this *exact* issue. The Fifth Circuit held that pre-suit settlement discussions "that precedes the commencement of any civil proceeding is not covered by the terms of the [insurance] contract". *Id.* at 722. The Fifth Circuit ruling directly supports dismissing BPX's duty to defend claim.

10. BPX attempts to blur the issue by arguing there is a difference between the pre-suit settlement discussions between BPX and BJS and the pre-suit settlement discussions in *Meyers*. There is no difference. Whether two parties agree in an MSA to

3

engage in pre-suit settlement discussions should a loss arise, or if they agree after the loss arises to engage in pre-suit settlement discussions, the result is an agreement between the two parties (neither of which is an insurer) for pre-suit settlement discussions. In the Fifth Circuit, such discussions are not " alternative dispute resolution proceedings".

11.     While not controlling, a Tenth Circuit decision from 2014 is instructive. *Cincinnati Ins. Co. v. AMSCO Windows*, 593 Fed. Appx. 802 (10th Cir. 2014) (not designated for publication). In that case, the Tenth Circuit held that a statutorily required pre-suit process did not constitute an "alternative dispute resolution proceeding" because "noncompliance does not result in any adverse judgment or obligation but rather imposes limited consequences in subsequent litigation." *Id.* at 809. The same is true here. Under the MSA, noncompliance with pre-suit settlement talks does not result in any adverse judgment or obligation. Noncompliance here does not result in *any* consequences; instead, the parties are free to *choose* to proceed to litigation. (*See* Dkt. 19-3 at 31-32, ¶¶12.2-12.3).

12.     BPX and BJS agreed to participate in pre-suit settlement discussions. Such discussions are not "alternative dispute resolution proceedings" in the Fifth Circuit.

### B.     Underwriters' Non-Consent Is Dispositive

13.     To constitute a "suit", pre-suit settlement discussions must not only be deemed an "alternative dispute resolution proceeding", but Underwriters *must also* consent to submission to such "proceeding". (*See* Dkt. 19-1 at 58, ¶18.b.). BPX does not provide evidence that Underwriters consented to any pre-suit settlement discussions and, instead, tries to avoid the clear requirement for consent by arguing that (1) Underwriters

4

are precluded from relying on lack of consent and (2) Underwriters must show prejudice for lack of consent. Neither argument is supported by the law relied upon by BPX.

14. There is no dispute that consent is a necessary component of an "alternative dispute resolution proceeding" being deemed a "suit". Not only does the unambiguous CGL Policy language require consent, but so does the case upon which BPX relies when arguing that pre-suit settlement discussions are "alternative dispute resolution proceedings". In *Altman*, the Florida court expressly held that "we do not address whether [the insurer] consented to [the insured's] participation in the [pre-suit statutorily mandated] process, thereby giving rise to its duty to defend …." *Altman Contractors, Inc.*, 232 So.3d at 274. In its "Conclusion", the court goes on to note that "consent is *required* to invoke the insurer's duty to defend the insured". *Id.* at 279 (emphasis added). Given Underwriters' lack of consent, there is no "suit".

15. Contrary to BPX's argument, Underwriters did not "unconditionally" deny coverage. The February 12, 2019 correspondence provides:

> Underwriters' coverage position set forth above is based solely on information available to Underwriters to date. Should any information become available or be discovered which suggests Underwriters should re-visit this determination, please advise.

(*See* Dkt. 21-3 at 10). Thus, Underwriters' position was subject to revision upon further information (*e.g.*, a future lawsuit which BPX could have filed against BJS).

16. Even if Underwriters had "unconditionally" denied coverage, BPX's argument still fails. As stated in the Supreme Court of Texas decision upon which BPX relies, an insurance company may not rely on a duty to litigate provision in an insurance policy "after it is given the opportunity to defend the suit or to agree to the settlement and

5

refuses to do either on the erroneous ground that it has not responsibility under the policy." *Gulf Ins. Co. v. Parker Prods., Inc.*, 498 S.W.2d 676, 679 (1973). However, this statement in *Parker* does not address the definition of "suit"; it deals only with a "no action" clause. The holding of the court regarding a "no action" clause does not apply to all other provisions requiring consent in an insurance policy. *See, e.g.*, *Nautilus Ins. Co. v. Concierge Care Nursing Ctrs., Inc.*, 804 F. Supp.2d 557, 559-60 (S.D. Tex. 2011) (holding that *Gulf Insurance*'s rule does not apply to a consent requirement found in an anti-assignment provision of an insurance policy). Therefore, consent is still required notwithstanding Underwriters' denial.

17. Further, BPX's argument puts the proverbial cart before the horse. Whether Underwriters had a duty to defend BJS in connection with the pre-suit settlement discussions is determined at the time of tender. At that time, Underwriters had not consented to the pre-suit settlement discussions. As such, there was no "suit" and, therefore, no duty to defend. BPX would ask this Court to find that, upon Underwriters properly denying coverage, consent is no longer required, such that the pre-suit settlement discussions, which was not a "suit" prior to denial, now becomes a "suit". Thus, Underwriters can *never* deny a duty to defend when there is no "suit", because doing so artificially creates a "suit", thereby retroactively triggering Underwriters' duty to defend. BPX's rule would require Underwriters to defend a non-"suit" (in contravention of clear policy language), because denial transforms a non-"suit" into a "suit". This argument is obviously erroneous.

18. BPX's argument that Underwriters must show prejudice is similarly flawed. BPX relies on two cases for its argument (*see* Dkt. 21 at 14-15), but both cases deal with

6

"consent to settle" provisions; neither involve the definition of "suit". As explained in *Nautilus*, the prejudice rule relating to an insurer's right to consent to settlements does not apply in other situations. *Nautilus Ins. Co.*, 804 F. Supp. 2d at 560. Thus, there is no foundation for BPX's argument that Underwriters must prove prejudice.

### C.   Underwriters' Denial of Coverage Is Not an Admission of a "Suit"

19.   BPX's argument that Underwriters' denial of coverage proves that a duty to defends exists (and, thus, that the pre-suit settlement discussions constitute a "suit") is patently false. BPX attempts to conflate the terms "claim" and "suit", by arguing that Underwriters were aware of a "claim" and denied coverage for a "claim". (*See* Dkt. 21 at 15). The Fifth Circuit rejected this identical argument in *Meyers Warehouse*, holding that the insurance policy "do[es] not purport to impose a duty on [the insurer] to defend [the insured] in the event a 'claim' is made". 614 Fed. Appx. at 723.

20.   BPX also contends that, by denying coverage for the claim, Underwriters "determined that they would deny the duty to defend in any subsequent suit …." (*See* Dkt. 21 at 16). As noted above, this statement is in direct conflict with what Underwriters *actually* said. Underwriters denied coverage based on the information known at the time of denial. However, Underwriters also advised they would consider additional information if and when it became available. For example, if BPX had filed suit against BJS, Underwriters would have been required to consider only the "eight corners" of the allegations in BPX's hypothetical Petition and the terms of the Policies. *See Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523, 528 (5th Cir. 2004). Underwriters would have been precluded from considering the contents of BPX's correspondence regarding pre-suit settlement discussions. Nothing in Underwriters'

denial suggests that they had already denied coverage for a future (and ultimately never filed) lawsuit against BJS or that they would have ignored clear Texas law dictating what must be considered when determining if a duty to defend a lawsuit is owed.

21.    Not only is BPX's argument legally flawed, but it is also logically flawed. BPX argues that "insurers who wrongfully *refuse to defend* an insured or erroneously deny coverage under a policy lose the benefit of the policy's procedural protections". (*See* Dkt. 21 at 16 (emphasis added)). However, the "procedural protection" to which BPX refers is the consent requirement of the definition of "suit". Thus, BPX argues that, by denying a duty to defend (which was never owed due to no "suit" having been filed), Underwriters cannot claim that no "suit" was filed. This cyclical argument is flawed.

22.    Therefore, BPX's cause of action for breach of the duty to defend under the CGL Policy must be dismissed with prejudice.

## IV.   Underwriters Will Never Have a Duty to Indemnify

23.    For the reasons discussed in their moving brief, Underwriters will never have a duty to indemnify. (*See* Dkt. 19 at 11, ¶¶23-26). BPX contends Underwriters are incorrect for two reasons: (1) BPX and BJS entered a settlement and (2) the amount of damages may be determined in this litigation. Both arguments fail.

24.    While BPX and BJS entered a settlement, it is clear on the face the agreement did not require BJS to pay BPX anything. Coverage is afforded under the Policies for amounts BJS becomes "legally obligated to pay" (*see* Dkt. 19-1 at 44) or "liability imposed upon the 'Insured' by law" (*see* Dkt. 21-1 at 42). BJS is not legally obligated to pay anything under the settlement agreement nor did the agreement impose liability against BJS. Even assuming the agreement between BPX and BJS is the type of

"settlement agreement" contemplated by the Policies, there is no amount for which indemnity is owed.

25. BPX also contends that this Court may determine the amount of damages, effectively turning this coverage action into an underlying negligence action. BPX seeks to put Underwriters in the place of BJS and insist that Underwriters present evidence regarding the underlying incident. In order to present evidence of the underlying negligence action, Underwriters would have to obtain said evidence from BJS. However, BJS is currently in bankruptcy and cannot be compelled to provide such information to Underwriters. Thus, BPX asks this court to force Underwriters to defend the negligence claim against BJS without the benefit of evidence to defend itself.

26. BPX claims that support for this position comes from the Texas Supreme Court's decision in *Great American Insurance Company v. Hamel*, 525 S.W.3d 655 (Tex. 2017). BPX is wrong. In *Hamel*, an insured was *sued* (*i.e.*, did not just engage in pre-suit settlement discussions) and the insurer denied defense for that lawsuit. That denial forced the insured to defend itself in the *lawsuit*. The insured's owner entered into an agreement with the plaintiff that plaintiff would only recover against the company's assets and not the owner's personal assets. At a bench trial the court rendered judgment against the insured-company for $365,089. *Id.* at 659-661. The insurer later admitted that its denial of coverage was improper, and the plaintiff proceeded against the insurer. After discussing the *Gandy* rule, the Supreme Court of Texas held that the judgment in the underlying trial was not the product of a fully adversarial trial such that it could not be enforced against the insurer. *Id.* at 666. The court then explained, "[w]e believe an insurer's *wrongful refusal to defend* presents a compelling reason to engage in this

endeavor [a separate lawsuit] despite its difficulty". *Id.* at 668 (emphasis added).

27. A separate lawsuit should not proceed in this case. First, for the reasons discussed above, Underwriters did not wrongfully refuse to defend BJS in connection with the pre-suit settlement discussions. Absent a "refusal to defend", the court's separate lawsuit discussed in *Hamel* does not apply.

28. Further, the *Hamel* court's holding was based on a specific set of facts: (1) lawsuit against the insured, (2) insurer wrongfully denied a duty to defend that lawsuit, (3) insured was forced to defend itself in a lawsuit, (4) insured entered into an agreement with the plaintiff to limit recovery directly against the insured's owner, (5) the lawsuit was tried to judgment, and (6) judgment of $365,089 was entered against the insured. None of these facts exists here. There was no lawsuit, no wrongful denial of the duty to defend, no pre-judgment agreement between BPX and BJS that BPX would not recover directly from BPX's owner, no lawsuit tried to judgment, and no judgment against BPX. Further, BJS did not have to defend itself in any lawsuit filed by BPX because BPX never filed any lawsuit. None of the facts constituting a "compelling reason" as discussed by the *Hamel* Court apply here.

29. Finally, the *Hamel* court did not rule that a plaintiff could recover *more* from an insurer in the separate lawsuit than it recovered against the insured in a first lawsuit. Specifically, the *Hamel* court did not hold that the plaintiff could recover *more* than $365,089 (the judgment against the insured) from the insurer. Such a ruling would be absurd. The issue with the initial judgment in *Hamel* (and in the *Gandy* line of cases) is that the amount could not be trusted as the "true" value of a claim given that it was not the subject of a fully adversarial trial. The court was concerned with the potential

10

*inflation* of the judgment given the lack of defense presented. The purpose of the separate lawsuit in Hamel was to establish the "correct" value of the claim. However, in no instance could the "correct" value exceed the non-adversarial judgment. BJS was never obligated to pay anything to BPX. Even if a separate lawsuit were appropriate (and it is not), the judgment from such lawsuit could necessarily not exceed $0.

30.  BPX's reliance on *Eagle Supply Manufacturing LP v. Landmark American Insurance Company*, 630 S.W.3d 342 (Tex. App.-Eastland 2021, pet. denied) is similarly unavailing. BPX contends that the *Eagle Supply* court "addressed a nearly identical set of facts" as presented here. (*See* Dkt. 21 at 20). The facts are far from "nearly identical". In *Eagle Supply*, the defendant (Metex) declared bankruptcy and the plaintiff (Eagle) filed a lawsuit in state court against affiliates and principals of Metex. Eagle also filed both liquidated ($2,309,830.01) and unliquidated (undetermined amount) claims in the bankruptcy. The bankruptcy settlement between Eagle and Metex allowed Eagle to include Metex as a defendant in the state lawsuit. The bankruptcy court entered an order granting Eagle's unsecured claim for $2,603,284.80. The insurers breached their duty to defend Metex in the claims brought by Eagle. *Id.*

31.  Here, BPX did not file a state court lawsuit against any party. BPX never filed a liquidated or unliquidated claim in BJS's bankruptcy. The BJS-BPX settlement in the bankruptcy court does not allow BPX to name BJS in a state court lawsuit. The bankruptcy court did not enter an order granting a claim made by BPX against the BJS estate. Underwriters did not breach any duty to defend BJS as there was not "suit" against BJS. In short, the two cases are diametrically different.

32.  BPX's cause of action for breach of the duty to indemnify under the CGL Policy

and the Umbrella Policy must be dismissed with prejudice.

### V.     No Valid "Bad Faith" Claim Here

33.     BPX does not address the litany of cases upon which Underwriters relied in their moving brief to demonstrate that Texas courts consistently reject claims for "bad faith" in the third-party context. Instead, BPX tries to deflect the analysis by trying to recenter the argument on the *Stowers* doctrine. Underwriters do not dispute that Texas applies the *Stowers* doctrine, with such doctrine clearly discussed in the case cited by BPX. Specifically, "[when an] insurer's negligent failure to settle results in an *excess [of limits] judgment against the insured*, the insurer is liable under the *Stowers* Doctrine for the entire amount of the judgment …." *Phillips v. Bramlett*, 288 S.W.3d 876, 879 (Tex. 2009) (emphasis added). However, as noted by Underwriters and not opposed by BPX, BJS (*i.e.*, the insured) will *never* face an excess judgment. Since BJS will never face an excess judgment, there is no potential for *Stowers* exposure. *See In re Farmers Texas County Mut. Ins. Co.*, 621 S.W.3d 261, 267 (Tex. 2021) ("We have consistently recognized the requirement that an insured be liable in excess of policy limits – whether as a result of judgment or settlement – in order to bring a *Stowers* claim" and "We decline to extend *Stowers* to cases in which there is no liability in excess of policy limits"). BJS's "*liability* in excess of policy limits is *necessary*" for a *Stowers* claim. *Id.* at 268 (emphasis added). Since BJS will never face liability, let alone excess of policy limits exposure, for the claim by BPX, there is no potential for a *Stowers* claim.

34.     There is no viable claim of "bad faith" under Texas law such that BPX's cause

of action for bad faith must be dismissed with prejudice.[4]

### VI. BPX Does Not Have a Separate Texas Insurance Code Claim

35. Accepting that Texas Insurance Code claims are unassignable, BPX argues that it is entitled to bring a claim for "continuing" breaches. BPX is wrong. As discussed in Underwriters' moving brief, BPX (a third-party claimant) is unequivocally precluded from bringing a claim under the Texas Insurance Code. (*See* Dkt. 19 at 14-16, ¶¶33-40).

36. BPX's argument that it is entitled to recover for "continuing" breaches appears to be based on the false premise that BPX somehow is the "insured" on the subject policies. The case upon which BPX relies involved a situation where one party purchased property, including insurance policies providing coverage over such property. *See Pogo Res., LLC v. St. Paul Fire & Marine Ins. Co.*, No. 3:19-cv-2682-BH, 2022 WL 209276 (N.D. Tex. Jan. 24, 2022). In that case, the plaintiff purchased both property and the interests in the insurance policy covering that property was assigned the insurance policy and sought coverage for an incident that occurred after the assignment. The purchaser effectively became the "insured". Thus, when an incident occurred post-purchase, a claim was made against the insurance policy by the purchaser, who was entitled to coverage in its own right under the policy. In addressing the issue of non-assignability, the court, on reconsideration, noted "none of the cases Defendant cited [regarding non-assignability of Texas Insurance Code claims] addressed insurance code violations that allegedly occurred *after the policy was assigned to the assignee."*

---

[4] BPX's suggestion that New York may apply is equally unavailing. BPX filed suit against Underwriters in Texas state court, alleging a claim of "bad faith" and a breach of the Texas Insurance Code in the same section. It is beyond dispute that BPX's claim against Underwriters is based on Texas law.

*Pogo Resources, LLC v. St. Paul Fire & Marine Ins. Co.*, No., 3:19-cv-2682-BH, 2022 WL1102861, at *3 (N.D. Tex. Apr. 13, 2022) (emphasis added).

37. BPX does not contend that it was assigned the insurance policy or that it purchased the insurance policy such that it is now the "insured" on the Policies. Were BPX to make such a contention, it would not be entitled to coverage. BPX alleges damages to its own property. However, coverage is not afforded for the property of the insured. (*See* Dkt. 19-1 at 47, ¶j.(1)). Also, since BPX cannot sue itself for damage to property, it cannot become "liable to pay" any amount to itself. (*See* Dkt. 19-1 at 44).

38. BPX is not the "insured" on the policies and cannot bring its own claim for alleged violation of the Texas Insurance Code. Therefore, BPX's cause of action for breach of the Texas Insurance Code must be dismissed with prejudice.

## VII. The Declaratory Relief Overwhelmingly Thwarts Judicial Economy

39. BPX asks this Court to exercise its discretion and entertain the declaratory relief requested in its First Amended Complaint even if such relief is completely duplicative of the relief requested in the First Amended Complaint. Of all the *Trejo* factors, the sixth – whether retaining the lawsuit would serve the purposes of judicial economy – is overwhelmingly the most significant here. For the reasons discussed in Underwriters' briefing, BPX does not have a viable claim for breach of the duty to defend or indemnity, bad faith, or insurance code violations. Resolution of those claims in the other causes of action necessarily resolves the declaratory relief requested by BPX. For example, if the Court agrees with the Fifth Circuit that pre-suit settlement discussion is not a "suit", then Underwriters had no duty to defend or indemnity under the Policies. Ruling on BPX's requested declaratory judgment that Underwriters were required to

defend and indemnify BJS would, thus, be duplicative. There is no reason to burden the Court with duplicative analysis or to require the parties to spend the significant time and costs associated with litigating the same issues twice.

40. Therefore, BPX's cause of action for declaratory judgment must be dismissed with prejudice.

## **CONCLUSION**

41. Improperly-named Defendants – Certain Underwriters at Lloyd's, London Subscribing to CGL Policy No. ENGLO1800982 and Certain Underwriters at Lloyd's, London Subscribing to Umbrella Policy No. ENGLO1800981 – respectfully request that the Court enter an Order dismissing with prejudice Plaintiff's First Amended Petition in its entirety due to Plaintiff's failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

DATED: July 22, 2022

Respectfully submitted,

**HOLMAN FENWICK WILLAN USA LLP**

*/s/ Amanda J. Kujda*
**Amanda J. Kujda**
Attorney-In-Charge
Texas No. 24053565 / Federal No. 685206
amanda.kujda@hfw.com
**Michael E. Carrer**
Texas No. 24073391 / Federal No. 1385117
michael.carrer@hfw.com
5151 San Felipe, Suite 400
Houston, Texas 77056
Telephone: 713-971-0888
Facsimile: 713-953-9470
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on July 22, 2022, a copy of the foregoing document was filed through the Court's CM/ECF system, which will send notice of such filing to the following counsel of record:

**PIERCE & O'NEILL, LLP**
John D. Sullivan, Esq.
jsullivan@pierceoneill.com
Tracy C. Temple, Esq.
ttemple@pierceoneill.com
Brian K. Tully, Esq.
btully@pierceoneill.com
4203 Montrose Boulevard
Houston, Texas 77006
*Attorneys for Plaintiff*

                                            */s/ Amanda J. Kujda*
                                            Amanda J. Kujda