United States District Court
Southern District of Texas
**ENTERED**
January 03, 2023
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| BPX PRODUCTION COMPANY, § | |
| § | |
| Plaintiff. § | |
| § | |
| V. § | CIVIL ACTION NO. 4:22-cv-01058 |
| § | |
| CERTAIN UNDERWRITERS § | |
| AT LLOYD'S LONDON § | |
| SUBSCRIBING TO CGL, *et al.*, § | |
| § | |
| Defendants. § | |

## OPINION AND ORDER

Defendants Certain Underwriters Subscribing to CGL Policy No. ENGLO1800982 and Umbrella Policy No. ENGLO1800981 ("Underwriters") have filed a Motion to Dismiss Under Rule 12(b)(6) for Failure to State a Claim ("Motion to Dismiss"). *See* Dkt. 19. After reviewing the briefing, the record, and the applicable law, I **GRANT** Underwriters' Motion to Dismiss.

## BACKGROUND

Plaintiff BPX Production Company ("BPX"), formerly known as Petrohawk Energy Corporation ("Petrohawk"), is an oil and gas producer. BJ Services, LLC ("BJ Services") provides oilfield services. In October 2017, BPX (as successor to Petrohawk) and BJ Services entered into a Master Services Agreement ("Agreement").

Under the Agreement, BJ Services performed a cement job on a well operated by Petrohawk in Reeves County, Texas. BPX alleges that BJ Services used improper components in the cement mix, resulting in "approximately 7,000 feet of cement harden[ing] prematurely inside the pipe, which caused an obstruction and damaged the wellbore and BPX's property." Dkt. 18 at 4. After unsuccessful attempts to undo the damage, BPX allegedly plugged and abandoned the well.

The Agreement contains a dispute resolution provision, which requires BPX and BJ Services to attempt to resolve any dispute through a three-step process:

(a) first, a Party must give written notice of the Dispute ("**Notice of Dispute**") to the other Party in accordance with the notice provisions of this Agreement. The Notice of Dispute must request a meeting, whether by phone or in person, of the appropriate senior management representatives of each Party (or its designee(s)) authorised to resolve the Dispute for the purpose of making a good faith attempt to resolve the Dispute ("**Settlement Meeting**");

(b) second, the Parties must participate in the Settlement Meeting within thirty (30) days following the issuance of the Notice of Dispute; and

(c) third, if the Dispute remains unresolved following the Settlement Meeting, the Parties may proceed to resolve the Dispute [through a lawsuit filed in a federal or state court in Harris County, Texas].

Dkt. 19-3 at 31–32. Following the dispute resolution procedure outlined in the Agreement, BPX notified BJ Services by letter in January 2019 that it was seeking $2.5 million in damages for BJ Services's negligence and fault. According to the First Amended Complaint, "[t]he two companies engaged in other activity necessary to handle the claim in accordance with the dispute resolution procedure in the [Agreement]." Dkt. 18 at 4.

After receiving the January 2019 letter, BJ Services asked Underwriters to defend and indemnify BJ Services against the claim. Underwriters insured BJ Services under two policies: Commercial General Liability Policy No. ENGLO1800982 ("CGL Policy") and Umbrella Policy No. ENGLO1800981 ("Umbrella Policy"). Underwriters denied the request, stating, in part, as follows:

> Underwriters deny they are obligated to indemnify or provide coverage under either policy . . . .
>
> . . . .

> Underwriters' coverage position . . . is based solely on information available to Underwriters to date. Should any information become available or be discovered which suggests Underwriters should re-visit this determination, please advise.

Dkt. 21-3 at 2, 10.

BPX and BJ Services continued to attempt to resolve their dispute. In July 2020, BJ Services filed for Chapter 11 bankruptcy in the U.S. Bankruptcy Court for the Southern District of Texas. As part of those proceedings, the bankruptcy court approved an agreement by which BJ Services assigned to BPX all claims against Underwriters "relating to or arising out of the liability insurance carriers' failure and refusal to defend and indemnify" BJ Services against BPX's claims. Dkt. 19-4 at 4.[1]

Ultimately, BPX sued Underwriters in state district court in Harris County, Texas for (1) breach of contractual duties to defend and indemnify; (2) breach of the duty of good faith and fair dealing; (3) violations of Chapter 541 of the Texas Insurance Code; and (4) declaratory judgment. Underwriters timely removed this case to federal court. Now, Underwriters move to dismiss this lawsuit under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

## LEGAL FRAMEWORK

Rule 12(b)(6) authorizes dismissal of a complaint when the plaintiff has failed to state a claim upon which relief can be granted. *See* FED. R. CIV. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a

---

[1] The Bankruptcy Court noted that BPX could not recover against BJ Services's bankruptcy estate because BPX did not file a proof of claim in the Chapter 11 case. *See* Dkt. 19-4 at 4.

3

cause of action, supported by mere conclusory statements, do not suffice." *Id*. At this initial pleading stage, I am required to accept as true all well-pleaded factual allegations in the Amended Complaint. *See Twombly*, 550 U.S. at 555–56.

## ANALYSIS

### A.  DUTY TO DEFEND

BPX contends that Underwriters breached the duty to defend owed to BJ Services under the CGL Policy. In asking me to dismiss this duty to defend claim, Underwriters argue that BPX, as the assignee of the insured, has failed to meet its burden to show that the CGL Policy required Underwriters to defend BJ Services. I agree.

When determining whether an insurer owes its insured a duty to defend, Texas courts follow the "eight corners rule." *Nat'l Union Fire Ins. Co. v. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997).

> An eight-corners analysis requires courts to compare only the allegations in the pleadings from the underlying lawsuit to the insurance policy. Hence the rule's name: The contents within the four corners of the pleadings are compared to the same within the four corners of the policy. If the allegations in the pleadings do not give rise to a claim covered by the insurance policy, then the insurer is not required to defend the insured.

*Certain Underwriters at Lloyds, London v. Pagourtzis*, No. 3:18-CV-00271, 2020 WL 8300514, at *2 (S.D. Tex. Nov. 30, 2020) (citing *Richards v. State Farm Lloyds*, 597 S.W.3d 492, 494 (Tex. 2020)). The insured bears the initial burden of showing that a claim against it is potentially covered by the insurance policy. *See Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523, 528 (5th Cir. 2004). "If a complaint potentially includes a covered claim, the insurer must defend the entire suit." *Zurich Am. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 491 (Tex. 2008).

Per the CGL Policy, Underwriters have the "right and duty to defend the insured against any 'suit' seeking [bodily injury or property] damages." Dkt. 19-1 at 44. So, to trigger a duty to defend, BPX must show that it was involved in a "suit" with BJ Services. The CGL Policy defines "suit" as follows:

> 18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:
>
>    a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or
>
>    b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

*Id.* at 58.

BPX alleges that its settlement negotiations with BJ Services constitute a "suit" under subsection (b) because such negotiations constitute "[a]ny other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent." *Id.* Notably, the "and" in subsection (b) serves as a conjunction, requiring BPX to make two showings. First, BPX must establish that its settlement negotiations with BJ Services were, in fact, an alternative dispute resolution proceeding. Second, BPX must show that Underwriters consented to the settlement negotiation. Underwriters challenge both prongs.

### 1. The Contractually Required BPX-BJ Services Settlement Negotiations Meet the CGL Policy's Definition of an Alternative Dispute Resolution Proceeding

Underwriters first argue that BPX and BJ Services's settlement discussions do not fall within the definition of an alternative dispute resolution proceeding. I respectfully disagree. Black's Law Dictionary defines "alternative dispute resolution" as "[a]ny procedure for settling a dispute by means other than litigation, as by arbitration or mediation." *Alternative Dispute Resolution*, BLACK'S LAW DICTIONARY (11th ed. 2019). Here, BPX and BJ Services engaged in contractually required settlement negotiations to resolve their dispute without

5

resorting to litigation. This, in my view, suffices to constitute an "alternative dispute resolution proceeding."

Underwriters direct my attention to *Meyers Warehouse, Inc. v. Canal Indem. Co.*, 614 F. App'x 719 (5th Cir. 2015), a Fifth Circuit case involving an insurance contract with the same definition of "suit" as the CGL Policy at issue in this case. In *Meyers Warehouse*, an insured negotiated a settlement of an underlying business dispute before any lawsuit was filed. The insured then sued its insurer, arguing that the insurer had a duty to defend the insured during the settlement negotiations of the underlying dispute. The Fifth Circuit held that "[a]n informal settlement negotiation that precedes the commencement of any civil proceeding is not covered by the terms of the [insurance] contract." *Id.* at 722. Unlike *Meyers Warehouse*, the settlement negotiations BPX and BJ Services engaged in were, by no means, "informal." Rather, the Agreement required BPX and BJ Services to follow a specific dispute resolution procedure, which included having appropriate senior management representatives make a good faith attempt to resolve the dispute. This contractual requirement distinguishes *Meyers Warehouse* from the case at hand. Because I find the contractually required settlement negotiations at issue here meet the definition of an alternative dispute resolution proceeding under the CGL Policy, I must now decide whether Underwriters consented to the alternative dispute resolution proceeding.

### 2. BPX Fails to Allege that Underwriters Consented to the Alternative Dispute Resolution Proceeding

The second prong of subsection (b) expressly requires BPX to establish that Underwriters consented to the alternative dispute resolution proceeding. Absent consent, there is no "suit" as that term is defined by the CGL Policy. Underwriters argue that "[n]o reasonable reading of BPX's First Amended Complaint leads to the conclusion that Underwriters consented to any pre-suit mediation between BPX and BJ [Services]." Dkt. 19 at 10. On this point, I agree.

6

Notably, BPX acknowledges that Underwriters never consented to the pre-suit settlement discussions. Nonetheless, BPX argues that Underwriters' denial of coverage prevents it from now using the consent provision as a "procedural protection." Dkt. 21 at 16. In effect, BPX asks me to read the consent provision out of the CGL Policy. Texas law, however, favors enforcing contracts as they are written. *See RSUI Indem. Co. v. The Lynd Co.*, 466 S.W.3d 113, 118 (Tex. 2015). As much as BPX would like me to, I cannot read words out of the CGL Policy. BPX bears the burden to show that coverage potentially exists under the CGL Policy. Because there is no allegation in the First Amended Complaint that Underwriters consented to the settlement negotiations, BPX is unable to trigger a duty to defend under the CGL Policy.

BPX also contends that Underwriters effectively waived the consent requirement because they neglected to explicitly state in their denial letter that they did not consent to the settlement negotiations between BPX and BJ Services. This argument fails for two reasons. First, the case that BPX uses to support this argument is inapposite. In *National Fire Insurance Co. v. Entertainment Specialty Insurance Services, Inc.*, 485 F. Supp. 2d 737 (N.D. Tex. 2007), the district court had to determine whether an insurance company had waived an exclusion by not raising it in its denial of coverage letter. "In Texas, when one specific ground of forfeiture is urged against a policy of insurance, and the validity thereof denied on that ground, all other grounds are waived." *Id.* at 741 (quotation omitted). To establish waiver by failing to raise another ground, "the insured must show that the company knew the facts which would entitle it to insist on forfeiture at the time the company denied liability." *Id.* Here, BPX argues that Underwriters waived the consent provision because they had all the information they needed yet failed to state that they refused consent. However, the consent provision in the CGL Policy is not an exclusion that can be invoked to deny coverage. Rather, consent is a requirement that gives rise to the duty to defend, triggering coverage under the CGL Policy. Underwriters did not have to raise the consent issue in their denial

letter. As such, Underwriters did not waive their ability to raise the consent issue. Second, in the denial letter, Underwriters "reserve[d] the right to assert policy provisions or defenses not discussed in this letter, which may be discovered to be applicable." Dkt. 21-3 at 9–10. This language effectively reserves other defenses to coverage, including the consent provision in the CGL Policy. *See Esco Transp. Co. v. Gen. Ins. Co. of Am.*, 75 F. App'x 936, 940 (5th Cir. 2003).

In short, BPX has failed to sufficiently allege facts to support a duty to defend claim.[2] Accordingly, the duty to defend claim is dismissed.

## B.  DUTY TO INDEMNIFY

In the First Amended Complaint, BPX also contends that Underwriters breached a duty to indemnify under both the CGL Policy and the Umbrella Policy. In Texas, the duty to defend and the duty to indemnify are distinct duties. *See Farmers Tex. Cnty. Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 82 (Tex. 1997). A duty to indemnify "generally arises only after an insured has been adjudicated, whether by judgment or settlement, to be legally responsible for damages that are covered by the policy." *Willbros RPI, Inc. v. Cont'l Cas. Co.*, 601 F.3d 306, 313 (5th Cir. 2010).

BPX's duty to indemnify claim fails because there has been no adjudication holding BJ Services legally responsible for damages. No matter how hard one looks, the First Amended Complaint is devoid of any factual allegations that the settlement agreement between BPX and BJ Services holds BJ Services legally responsible for damages. It is also clear from the face of the settlement agreement that the settlement did not require BJ Services to pay BPX any money, nor did it impose liability against BJ Services. The settlement merely assigned any claims BJ Services possessed against Underwriters to BPX.

---

[2] In the First Amended Complaint, BPX also suggests that the Umbrella Policy includes a duty to defend. In its response to the Motion to Dismiss, BPX expressly abandons such a claim, acknowledging that the Umbrella Policy does not include a duty to defend. *See* Dkt. 21 at 12 n.1.

8

Moreover, the bankruptcy court handling the BJ Services bankruptcy issued an order that expressly prevents BPX from suing BJ Services for damages. *See* Dkt. 19-4 at 4 ("BPX failed to file a proof of claim in BJ [Services]'s chapter 11 case and therefore is unable to recover against the bankruptcy estate of BJ [Services] directly and only has potential recourse against the Underwriters directly."); *id.* at 5 ("BPX fully releases and discharges all of BPX's claims, demands, or suits against [BJ Services].").

Nonetheless, BPX, citing the Texas Supreme Court's decision in *Great American Insurance Co. v. Hamel*, 525 S.W.3d 655 (Tex. 2017), argues that I can determine the amount of damages for which BJ Services would be legally responsible. In *Hamel*, an insurer declined to defend an insured in a lawsuit, forcing the insured to defend itself. *See id.* at 659. Before trial, the insured's owner entered into an agreement with the plaintiff that the plaintiff would only recover against the company's assets and not seek to pierce the corporate veil and enforce a judgment against the owner's personal assets. *See id.* at 660. The case proceeded to a bench trial, which resulted in a judgment against the insured for $365,089 in damages. *See id.* at 661. In a subsequent suit the insured filed against the insurer, the trial court found that the insurer wrongfully refused to defend the insured in the first lawsuit. *See id.* at 662. On appeal, the Texas Supreme Court held that the judgment in the underlying trial could not be enforced against the insurer because it was not the result of a "fully adversarial" trial. *See id.* at 666–67. Instead, the high court allowed the subsequent coverage suit to proceed to litigate the underlying liability issues, noting that "an insurer's *wrongful* refusal to defend presents a compelling reason to engage in [a separate lawsuit] despite its difficulty." *Id.* at 668 (emphasis added).

This case is unlike *Hamel*. Here, there has been no finding that Underwriters *wrongfully* refused to defend BJ Services. Moreover, there will never be a finding that Underwriters wrongfully refused to defend BJ Services because, as noted above, BPX has not met its burden to allege sufficient facts to support a legally

9

cognizable claim that Underwriters had a duty to defend BJ Services. BPX's cause of action for breach of the duty to indemnify must, therefore, be dismissed.

### C. DUTY OF GOOD FAITH AND FAIR DEALING

BPX also alleges that Underwriters "breached their duty of good faith and fair dealing through their conduct in denying BPX's claim. . . . Despite their liability being reasonably clear, [Underwriters] denied coverage and refused to pay on BPX's claim against BJ [Services]." Dkt. 18 at 9.

Texas courts, however, do not recognize bad-faith claims in the third-party context. *See Md. Ins. Co. v. Head Indus. Coatings & Servs., Inc.*, 938 S.W.2d 27, 28 (Tex. 1996) (superseded by statute on other grounds). Faced with this obstacle, BPX attempts to misconstrue its bad-faith claim as a *Stowers* claim.

While "*Stowers* is the only common law tort duty in the context of third party insurers responding to settlement demands," the doctrine is inapplicable here. *Mid-Continent Ins. Co. v. Liberty Mut. Ins. Co.*, 236 S.W.3d 765, 776 (Tex. 2007). To bring a *Stowers* claim, an insured must be "liable in excess of policy limits." *In re Farmers Tex. Cnty. Mut. Ins. Co.*, 621 S.W.3d 261, 267 (Tex. 2021). Here, BJ Services will never be held liable in excess of policy limits because, per the bankruptcy order discussed above, BPX cannot bring a claim against BJ Services for monetary damages. The good faith and fair dealing claim should be dismissed.

### D. CHAPTER 541 OF THE TEXAS INSURANCE CODE

The First Amended Complaint also contains a claim that Underwriters violated their obligations under Chapter 541 of the Texas Insurance Code by "[m]isrepresenting material facts and policy provisions related to coverage available for the claim;" "[f]ailing to attempt in good faith to reach a prompt and fair settlement with BPX when BJ [Services]'s liability on BPX's claim was reasonably clear;" and "[r]efusing to pay the BPX claim without first conducting a reasonable investigation." Dkt. 18 at 9. BPX cannot successfully bring a claim that Underwriters breached their duties to BJ Services under the Texas Insurance Code because these claims are unassignable.

The ability to assign a statutory claim depends on whether the claim is characterized as "personal" or "property." *See PPG Indus., Inc. v. JMB/Houston Ctrs. Partners Ltd. P'ship*, 146 S.W.3d 79, 87 (Tex. 2004). If a claim is characterized as property, it is assignable; if it is characterized as personal, it is unassignable. *See id.* Although the Texas Supreme Court has not squarely addressed the assignability of claims brought under the Texas Insurance Code, it has held that causes of action arising from the Texas Deceptive Trade Practices Act ("DTPA") cannot be assigned by an aggrieved consumer because the cause of action is personal and punitive, not property. *See id.* at 90. The same reasoning applies with equal force to claims under Chapter 541 of the Texas Insurance Code. For that reason, Texas appellate courts and federal courts sitting in Texas have uniformly found that claims brought under the Texas Insurance Code are personal and, thus, not assignable. *See, e.g.*, *TuYo Holdings, LLC v. Transamerica Life Ins. Co.*, No. SA-22-CV-00845, 2022 WL 17490982, at *3 (W.D. Tex. Dec. 6, 2022) (holding that "causes of action arising under the Texas Insurance Code may not be assigned"); *Angelina Emergency Med. Assocs. PA v. Health Care Serv. Corp.*, No. 3:18-CV-00425, 2020 WL 7259222, at *7 (N.D. Tex. Dec. 10, 2020) (holding "that claims brought under section 541 of the Insurance Code may not be assigned to third parties"); *Lee v. Rogers Agency*, 517 S.W.3d 137, 152 n.11 (Tex. App.–Texarkana 2016, pet. denied) ("DTPA and [Texas] Insurance Code causes of action are not 'property-based claims' but instead are 'personal claims.'"); *Great Am. Ins. Co. v. Fed. Ins. Co.*, No. 3:04-cv-2267, 2006 WL 2263312, at *10 (N.D. Tex. Aug. 8, 2006) ("Like the DTPA, the [Texas] Insurance Code remedies are personal and punitive in nature."). I find this authority compelling and will join those courts holding that claims under the Texas Insurance Code are personal and therefore unassignable.

Still, BPX argues that Underwriters should be held liable "for continuing breaches after the assignment from BJ Services to BPX." Dkt. 21 at 24. To support this argument, BPX points to *Pogo Resources, LLC v. St. Paul Fire & Marine*

*Insurance Co.*, No. 3:19-cv-2682, 2022 WL 209276 (N.D. Tex. Jan. 24, 2022). There, the plaintiff purchased property and interests in insurance policies from a bankrupt oil and gas company. *See id.* at *2. These interests were also assigned to the plaintiff. *See id.* Following an oil spill, the plaintiff filed a claim with its insurance company, who denied the claim. *See id.* The plaintiff then sued the insurance company for violating Chapter 541 of the Texas Insurance Code. *See id.* at *3. While the district court noted that claims under the Texas Insurance Code are personal and unassignable, it found that "Plaintiff has alleged privity of contract with [the insurance company] as the assignee of the [insurance policies]" and that "the alleged violations of the Texas Insurance Code are based on [the insurance company's] conduct when it was in privity with Plaintiff under the policies." *Id.* at *17. The court proceeded to deny the motion to dismiss on the Chapter 541 claim because "[w]hether Plaintiff can show reliance and loss based on misrepresentations by [the insurance company] is a material fact issue best left for summary judgment determination." *Id.*

*Pogo* does not control this case. Here, in stark contrast to *Pogo*, BPX is not the assignee of BJ Services's insurance policies. Rather, BPX is the assignee of BJ Services's "rights, claims, and causes of action" against Underwriters. Dkt. 19-4 at 4. Additionally, BPX has not alleged privity of contract with Underwriters. Nor has BPX alleged any specific "continuing breaches" of Chapter 541. Instead, BPX alleges only that there is a "possibility of [Underwriters'] liability for continuing breaches after the assignment from BJ Services to BPX." Dkt. 21 at 24. This is insufficient factual content that does not allow me to draw any reasonable inference that Underwriters are liable under Chapter 541. Underwriters' request to dismiss the Chapter 541 claims should be granted.

E. **BPX CANNOT RECEIVE DECLARATORY RELIEF BECAUSE NO SUBSTANTIVE CLAIMS REMAIN**

BPX requests declaratory relief as a separate cause of action. Specifically, it asks for declarations that:

12

- BJ [Services] performed the cement job at the Well in a careless, substandard, negligent, and/or grossly negligent manner;

- BPX's claim against BJ Services was within the scope of the applicable insurance policies issued to BJ Services by [Underwriters];

- [Underwriters] were required to defend and indemnify BJ Services against this claim; and,

- [Underwriters] wrongfully denied coverage, failed to perform an adequate investigation, or otherwise did not have an adequate basis to deny coverage.

Dkt. 18 at 10.

In determining whether declaratory relief is appropriate, I first note that the Federal Declaratory Judgment Act "does not create any substantive rights or causes of action." *Sid Richardson Carbon & Gasoline Co. v. Interenergy Res., Ltd.*, 99 F.3d 746, 752 n.3 (5th Cir. 1996). Because I have already found that the substantive claims brought in the Amended Complaint should be dismissed, there is no underlying legal action upon which BPX may receive declaratory relief. *See Williams v. Wells Fargo Bank, N.A.*, 560 F. App'x 233, 243 (5th Cir. 2014) (finding that because "declaratory judgment is remedial in nature" a determination that the underlying causes of action were properly dismissed "likewise warrants affirmance of the court's dismissal of [a] request for declaratory judgment"). The declaratory judgment claim must be dismissed.

## CONCLUSION

For the reasons stated above, I **GRANT** Underwriters' Motion to Dismiss (Dkt. 19). This case is dismissed. I will enter a separate final judgment.

SIGNED this 3rd day of January 2023.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE